

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0628-12

---

### RODNEY GALE UNKART, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### PALO PINTO COUNTY

---

**KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. JOHNSON, J., concurred. MEYERS, J., did not participate.**

During voir dire, the trial judge said that he personally would want to testify if accused of a crime but admonished the prospective jurors that others might have a different perspective, that a defendant could have good reasons not to testify that were unrelated to guilt, and that the law prohibited the jurors from holding a defendant's failure to testify against him. Defense counsel belatedly requested a mistral but did not ask for an instruction to disregard the trial judge's comments. Holding that the comments constituted fundamental error under *Blue*,[1] the court of

---

[1] *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000).

appeals reversed the conviction. We disagree with the court of appeals's conclusion that the trial judge's comments constituted fundamental error. We further conclude that appellant's request for a mistrial did not preserve error because any harm flowing from error in this case could have been cured by an instruction to disregard and in fact was cured by the totality of the trial judge's instructions.

## I. BACKGROUND

### A. Trial

During his oral instructions to the jury at the beginning of voir dire, the trial judge discussed the right to remain silent when a citizen encounters law enforcement "on the street." The trial judge then discussed a defendant's right not to testify at trial:

> COURT: . . . [T]he right to remain silent extends all the way to the trial. The defendant does not have to testify. He or she has the right to remain silent. It continues throughout the trial. They have the right to testify if they want to, but it's up to them and their counsel to advise them and decide what they want to do.
>
> This is an area of the law that I find that people have opinions about, and there's nothing wrong with that. It's a great country that we live in. But my opinion about that doesn't jive with everyone else's opinion, and I want to go into that to discuss with you how important your frame of mind, your willingness to accept this instruction that I'm about to give you because, you know, I think – praise God, I haven't been charged with a crime. *But if I were, then I think I would probably want to get up and tell my side. It's just my nature. I would want to probably say my point of view on the thing or my version of the facts, but that's just me.*
>
> And you may have the same opinion that Judge Ray has, or not; and it's okay, subject to one condition, that is, that no matter what your opinion on the matter is, that you can follow the instruction that follows. If the defendant decides not to testify, you cannot refer or allude to that fact during your deliberations. In other words, if you're on the jury, you can't go back in the jury room and say, "Hey, she didn't even testify. What's up with that?" You can't even refer to that fact, and you cannot consider that decision to remain silent as a circumstance against the defendant for any reason whatsoever.

Now, the right to remain silent is in the Bill of Rights. I don't know if y'all know it, but the Bill of Rights are referred to as the first ten amendments to the United States Constitution. I mean, we're talking top ten, folks. This is one of the biggies, the right to remain silent and not give evidence that can be used against you; and it's important. And when you stop and think about this instruction, how important would that be if there was some punishment or sanction for exercising – in other words, if they could hold it against you or use it against you for not testifying, for exercising that right?

As a matter of fact, I've been at this for 37 years trying cases in this very courtroom and many others throughout the State; and I find that there are a lot of reasons why someone may not want to testify that don't have a darn thing to do with whether he or she is guilty or not guilty.

Some people – a lot of people that I know and you wouldn't believe it; but I used to be that way myself. It's that the area of public speaking, it's just not their bag. They are nervous. They tighten up. They lock up. Their body language is awful. They break out in a sweat. Their complexion changes colors. And some people just absolutely are put off by having to talk in a room full of people, especially people that they don't know, especially if you're the one who's at risk. You're the one that's accused of something.

And what we have found is that some people just don't present themselves well, and it may be a good decision for them to not get up there and have the jury read a bunch of wrong stuff into their body language by – caused by this fear of public speaking. And there are many, many others. I don't want to go into every one I've come across.

The point is, there's a lot of reasons why somebody might not testify that don't have anything to do with whether he or she is guilty or not guilty, and the long and short of it is, if you are instructed, as I did a few minutes ago and that is the law, you can't be a juror unless you can tell us under oath that you can follow that instruction.

So here's the question. Having received that instruction, is there anyone who cannot follow that instruction? That you have an opinion about this that is so strong that you can't set aside your personal feelings and promise us all under oath that you can follow Judge Ray's instruction, that you cannot consider that as a circumstance against the defendant for any purpose whatsoever. Anybody have a problem with that? You just feel so strongly about it that, by golly, if somebody doesn't testify, I'm going to assume they're guilty. Anybody feel that way?

*(No response.)*

COURT: Anybody that has any problem with that discussion or that instruction, raise

your hands.

*(No response.)*

COURT: Okay.  For the record, no hands are up.[2]

Defense counsel did not object to any of these comments at the time they were made.  Voir dire continued that day, and a jury was selected and sworn.

The next morning, defense counsel filed a written motion for mistrial, complaining about the portion of the trial judge's comments that we have italicized above.  However, defense counsel stated on the record that he was *not* asking for an instruction to disregard:

> I'm not asking for the Court to issue an instruction to the jury to disregard that statement, because I feel it'd be ringing the bell twice; and I don't think it could cure the defect that the defendant has complained of.  I just wanted that on the record. That's why I'm not asking the Court for an instruction.

The trial judge denied the motion for mistrial.

Subsequently, the jury convicted appellant on two controlled-substance counts[3] and sentenced him to twelve years' imprisonment and a $10,000 fine on each count.

## B. Appeal

In his first issue on appeal, appellant contended that the trial judge improperly commented on his right not to testify and thereby vitiated his presumption of innocence.  Relying in part upon *Blue*, the court of appeals agreed, holding that the comments vitiated the presumption of innocence

---

[2] Italics added for emphasis in second paragraph.  The words "no response" are in italics in the record.

[3] He was convicted of the manufacture of methamphetamine in an amount of 4 grams or more but less than 200 grams and the possession of methamphetamine with intent to deliver in an amount of 4 grams or more but less than 200 grams.

and "were fundamental error of constitutional dimension."[4] The appellate court found that because "the trial judge indicated that he would testify if he were a defendant, and appellant did not testify, the comments of the trial judge diminished the credibility of the defense's approach to the case."[5] The court of appeals also found that, "though the trial judge gave additional instructions on the right to remain silent after his comments, there remained the strong possibility that a member of the jury may have wondered why appellant, unlike the trial court, did not testify."[6] And the court of appeals held that "[a] further instruction by the trial judge concerning his comments would not have cured the problem."[7] Consequently, the court of appeals reversed the conviction and remanded the case for a new trial.[8]

In its discussion, the court of appeals did not mention that the lead opinion in *Blue*, containing the presumption-of-innocence rationale, was a plurality opinion.[9]

The State contends before us that the court of appeals was mistaken in holding that the trial judge's comments constituted fundamental error under *Blue*, and the State further contends that appellant has forfeited his complaint.[10]

---

[4] *Unkart v. State*, No. 11-10-00074-CR, slip op. at 5 (Tex. App.–Eastland March 8, 2012) (not designated for publication).

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.* at 7.

[9] *Id.*, *passim*.

[10] The State's grounds for review are as follows:

1. The court of appeals misconstrued *Blue v. State* when it found fundamental error

## II. ANALYSIS

Most appellate complaints must be preserved by a timely request for relief at the trial level.[11] The "traditional and preferred procedure" for seeking relief at trial for a complaint that must be preserved is "(1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient."[12] A party may skip the first two steps and request a mistrial, but he will be entitled to one only if a timely objection would not have prevented, and an instruction to disregard would not have cured, the harm flowing from the error.[13] But some appellate complaints do not have to be preserved by a timely request for relief at the trial level.[14]

Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial.[15]

---

in the trial court's voir dire comments about a defendant's decision whether to testify.

2. Appellant's untimely motion for mistrial and his failure to request an instruction to disregard forfeited any complaint about the trial court's comment.

[11] *See* Tex. R. App. P. 33.1; *Marin v. State*, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993) ("The system of adjudication at work in Texas, and generally throughout the United States, is chiefly characterized by an array of rules which are optional with the litigants . . . . This is consistent with an adversarial process in which the trial judge, as institutional referee, enforces rules of contention only when asked to do so by a litigant for whose benefit the rule exists.").

[12] *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).

[13] *Id.*

[14] *Marin*, 851 S.W.2d at 279 (some rights must be implemented unless affirmatively waived and some absolute requirements must be implemented regardless of the parties' wishes).

[15] *See Jasper v. State*, 61 S.W.3d 413, 420-21 (Tex. Crim. App. 2001); *Blue*, 41 S.W.3d at 131 (plurality op.) ("the general rule is that counsel must object to the trial judge's comments during trial in order to preserve error"); *Woods v. State*, 569 S.W.2d 901, 904 (Tex. Crim. App. 1978); *Minor v. State*, 469 S.W.2d 579, 580 (Tex. Crim. App. 1971).

In *Blue*, however, we granted relief on an improper-judicial-comment complaint that was not preserved at trial, though we were unable to agree upon a rationale.[16] The trial judge had apologized to the jurors about the delay in the case, telling them that the defendant was still deciding whether to accept the State's plea offer or go to trial.[17] The trial judge further told the jurors, "I prefer the defendant to plead," and "[W]e were all trying to work toward that and save you time and cost of time."[18] A plurality of the Court decided that the trial judge's remarks vitiated the defendant's presumption of innocence.[19] Judge Mansfield, who was part of the plurality, also filed a concurring opinion, in which he concluded that the doctrine of procedural default "does not apply to statements made by a trial judge that rise to the level of fundamental error."[20] Judge Keasler concluded that the trial judge's remarks were so egregious as to show that he was biased.[21] Judge Meyers concurred in the judgment without stating a rationale.[22]

Twice we have avoided addressing the jurisprudential significance of *Blue*, deciding either that the case before us was distinguishable from *Blue*[23] or that the underlying claim was without

---

[16] *See Blue*, 41 S.W.3d at 130, 133 (plurality op.); *id.* at 135 (Keasler, J., concurring).

[17] *Id.* at 130.

[18] *Id.*

[19] *Id.* at 131-32 (plurality op.)

[20] *Id.* at 134 (Mansfield, J., concurring).

[21] *Id.* at 138-39 (Keasler, J., concurring).

[22] *See id.*, heading.

[23] *See Jasper*, 61 S.W.3d at 421 ("Even if we were bound to follow that plurality opinion [in *Blue*], the first interchange of which appellant complains does not rise to this level.").

merit.[24] In published opinions, several courts of appeals have cited *Blue*'s plurality opinion for the proposition that some comments by the trial judge may constitute fundamental error but have found no reversible error in the case at hand.[25] Some courts of appeals have stated that *Blue*, as a "plurality" decision or opinion, is not binding authority.[26] Some courts have observed that we have avoided discussing the significance of *Blue*.[27] Some courts have looked to Judge Keasler's concurrence in *Blue* for guidance on claims of judicial bias.[28] The Waco Court of Appeals, in split opinions, has held that *Blue* has precedential value.[29]

We now take the opportunity to clarify the status of *Blue*. An "opinion of the Court" or "majority opinion" is one that is joined by a majority of the judges participating in the case. A

---

[24] *Brumit v. State*, 206 S.W.3d 639, 644-45 (Tex. Crim. App. 2006) (after referring to *Blue*: "We need not decide today whether an objection below is required to preserve an error of this nature on appeal because the record here does not reflect partiality of the trial court or that a predetermined sentence was imposed.").

[25] *Infante v. State*, ___ S.W.3d ___, 2013 Tex. App. LEXIS 1046, *14-15 (Tex. App.–San Antonio February 6, 2013, no pet.); *Clark v. State*, 282 S.W.3d 924, 929 (Tex. App.–Beaumont 2009, pet. ref'd); *James v. State*, 258 S.W.3d 315, 319 (Tex. App.–Austin 2008, pet. ref'd).

[26] *Morgan v. State*, 365 S.W.3d 706, 710-11 (Tex. App.–Texarkana 2012, no pet.); *Muhammed v. State*, 331 S.W.3d 187, 194 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd); *Marshall v. State*, 312 S.W.3d 741, 744 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd); *Peavey v. State*, 248 S.W.3d 455, 471 (Tex. App.–Austin 2008, pet. ref'd); *Tijerina v. State*, 202 S.W.3d 299, 306 n.3 (Tex. App.– Fort Worth 2006, pet. ref'd).

[27] *McLean v. State*, 312 S.W.3d 912, 916 (Tex. App.–Houston [1st Dist.] 2010, no pet.); *Wilkerson v. State*, 347 S.W.3d 720, 725-26 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd).

[28] *See Hernandez v. State*, 268 S.W.3d 176, 184 & n.34 (Tex. App.–Corpus Christi-Edinburg 2008, no pet.) (citing cases).

[29] *Duffey v. State*, 249 S.W.3d 507, 510-11 (Tex. App.–Waco 2007, pet. ref'd) ("We thus view *Blue* as precedent." Error was found to be harmless); *Carr v. State*, 249 S.W.3d 502, 504-05 (Tex. App.–Waco 2007, pet. ref'd) (same).

"fractured decision" is a judgment by an appellate court that has no majority opinion.[30] A "plurality opinion" is that opinion in a fractured decision that was joined by the highest number of judges or justices.[31] Plurality opinions do not constitute binding authority.[32] But a fractured decision may constitute binding authority if, and to the extent that, a majority holding can be ascertained from the various opinions in the case.[33] Even if the rationales seem disparate, if a majority of the judges agree on a particular narrow ground for or rule of decision, then that ground or rule may be viewed as the holding of the court.[34]

With respect to *Blue*, it is not possible to ascertain a majority holding or the narrowest ground or rule that commands a majority of the court. The rationales of the plurality and concurring opinions are entirely disparate: they did not even focus on the same error, much less give the same

---

[30] *See Contreras v. State*, 312 S.W.3d 566, 581-82 (Tex. Crim. App. 2010); *Martinez v. State*, 272 S.W.3d 615, 632-33 (Tex. Crim. App. 2008).

[31] *See Bowen v. State*, 374 S.W.3d 427, 429 (Tex. Crim. App. 2012); *Haynes v. State*, 273 S.W.3d 183, 185-86 (Tex. Crim. App. 2008). It is possible for a decision to fail to contain even a plurality opinion, if two or more non-majority opinions are joined by the same number of judges. In that case, one of the opinions announces the judgment of the court and can be referred to simply as the "lead opinion." Judges or justices can also join only part of an opinion, so in an extreme case, an opinion could be part majority, part plurality, and part simply a lead opinion.

[32] *Vasquez v. State*, 389 S.W.3d 361, 370 (Tex. Crim. App. 2012); *Thornton v. State*, 145 S.W.3d 228, 234 (Tex. Crim. App. 2004).

[33] *Contreras*, 312 S.W.3d at 582 (citing proposition for which eight of the justices in a fractured decision expressed their agreement); *Carter v. State*, 309 S.W.3d 31, 38 & n.38 (Tex. Crim. App. 2010) (discerning a majority holding from the concurring opinion in *Missouri v. Seibert*, 542 U.S. 600 (2004) as deciding the case on the narrowest grounds); *Haynes*, 273 S.W.3d at 183, 186-87 (discerning a holding from plurality and concurring opinions in *Collier v. State*, 999 S.W.2d 779, 780 (Tex. Crim. App. 1999)). *See also Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011) (citing plurality and concurring opinions in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), which overruled *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)).

[34] *Carter* and *Haynes*, *supra*.

reason why it was error. The plurality focused on the effect of the trial judge's comments on the jury, while Judge Keasler considered the comments merely as evidence that the trial judge was biased. Consequently, the *Blue* decision has no precedential value. The opinions in the *Blue* case may nevertheless be considered for any persuasive value they might have, in the same way as any other opinion that does not command a majority of this Court, such as a concurring opinion.

But whatever persuasive value one might afford to the opinions in *Blue*, they do not support a reversal in this case because the circumstances here differ significantly in several respects from the circumstances in *Blue*. First, the attitudes expressed by the trial judges were considerably different. In *Blue*, the trial judge's remarks were an expression of exasperation and impatience with how a defendant was exercising his rights. Blue's trial judge essentially faulted the defendant for failing to quickly give up his right to a jury trial and accept a plea offer. By contrast, the remarks by the trial judge in the present case were made with the manifest intent to benefit the defendant and to protect his rights. The remarks were part of an extended effort to hammer home to the jurors that they should not hold a defendant's failure to testify against him.

Second, the trial judge in *Blue* conveyed information about the case that the jurors would not have otherwise known, while the trial judge in the present case did not. In *Blue*, the jurors were informed that the defendant was involved in plea negotiations. While jurors might understand that defendants often engage in plea negotiations, the jurors would not have known that Blue had done so absent the trial judge's remarks. In the present case, however, the trial judge's remarks did not convey any information about the case. The jurors were not even told that appellant would not testify, but even if the judge's remarks in this case could be construed as implying that appellant would not testify, the jurors would have discovered that fact once appellant declined to take the stand

at trial.

Third, the trial judge in *Blue* told the jurors what he preferred the defendant to do, but the trial judge's remarks in the present case did not. Blue's trial judge expressly told the jurors that he preferred that the defendant plead to the State's offer. The trial judge in the present case told the jurors that if *he* were on trial, he would want to testify, but he did not tell the jurors that appellant ought to want to testify. The trial judge explained his own desire to testify as a purely personal preference, not as an expectation that he would have of appellant.

Fourth, the trial judge in the present case gave the jurors a logical reason to disregard his expressed personal preference. The trial judge told the jurors that a defendant might have legitimate reasons, unrelated to guilt, for not testifying. As an example, the trial judge suggested that a defendant, though not guilty, might be so nervous about speaking in public that he would give the jurors false cues that would be taken as an indication of guilt if he testified. The trial judge further told the jurors that there were other non-guilt related reasons not to testify that he did not need to discuss. Although a similar discussion occurred in *Blue* concerning a defendant's failure to testify, no such discussion occurred in connection with the trial judge's comments that the defendant was involved in plea negotiations and that the judge preferred that the defendant plead.[35]

Fifth, here, the trial judge emphatically instructed jurors about what the law required, that the law required the jurors to disregard the judge's own personal preference, and that it was important to be able to follow that law. In a number of different ways, the jurors were told that the law required that they not hold a defendant's failure to testify against him, and the trial judge emphasized the importance of being able to follow that law. He told the jurors that if they agreed with his own

---

[35] *See Blue*, 41 S.W.3d at 130.

preference about testifying, they were required to set that opinion aside and follow the law. He explained that the right not to testify was part of the Bill of Rights and that, as such, it was part of the "top ten." By contrast, the trial judge's statements in *Blue* contained no instructions that could be construed as telling the jury to disregard the trial judge's comment regarding the defendant's participation in plea discussion or the comment regarding the trial judge's desire that the defendant accept the State's plea offer.[36]

What happened in the present case is a far cry from what happened in *Blue*. Analyzing the trial judge's instructions as a whole makes it clear that he was engaged in a well-intentioned effort to protect appellant's rights. Most of the trial judge's instructions were, functionally, an instruction to disregard the comment about which appellant complains.[37] And if there were any residual harm, it would have been cured by a timely instruction to disregard the specific comments that appellant found objectionable. Appellant was, therefore, not entitled to a mistrial on the basis of the trial judge's comments in voir dire, and he forfeited a lesser remedy by failing to request an instruction to disregard.

We reverse the judgment of the court of appeals and remand the case to that court to resolve appellant's remaining issue.

Delivered: June 5, 2013
Publish

---

[36] *See id.*

[37] We do not decide whether error occurred in this case or whether any harm would have occurred absent curative instructions. We also note that appellant's objection was late, but we need not address the procedural consequences of the late objection given our disposition.