**Affirmed as Modified; Opinion Filed November 7, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00859-CR**

**STEVEN GLENN ROBINSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-56945-w**

## MEMORANDUM OPINION

Before Justices Moseley, Lang, and Richter[1]
Opinion by Justice Moseley`

A jury convicted Steven Glenn Robinson of murdering Shirley Kelly. In six issues, Robinson argues the trial court abused its discretion by denying Robinson's motion to suppress cell phone records because the search warrant did not show probable cause and that the issuing magistrate had the authority to issue the warrant; the trial court abused its discretion by denying Robinson's motion for mistrial; there was insufficient evidence to support the trial court's order for Robinson to pay court costs; and the judgment should be reformed. The background and facts of the case are well-known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We overrule Robinsons first, second, third, and fourth issues, and we

---

[1] The Hon. Martin Richter, Justice, Assigned

sustain his fifth and sixth issues seeking modification of the judgment. We affirm the trial court's judgment as modified.

Robinson initially challenges the trial court's denial of his motion to suppress cell phone records that police seized pursuant to an evidentiary search warrant. He argues the affidavit attached to the warrant does not show probable cause because it does not allege that a specific offense was committed, does not describe how the phone records were evidence of any offense or evidence of how Robinson committed that offense, and does not show that a magistrate authorized to issue a warrant signed the warrant.

Normally motions to suppress are reviewed using a bifurcated standard, deferring to findings of historical facts and reviewing de novo the application of law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, when the trial court determines probable cause to support the issuance of a search warrant, it does not make a credibility determination; it is constrained to the four corners of the affidavit. *Id*. Thus, we review the trial court's ruling on the motion to suppress de novo and apply the same standard as required of the trial court. When reviewing the magistrate's decision to issue a warrant, "we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search." *Id*. We do not analyze the affidavit in a hyper-technical manner. We interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. *McLain*, 337 S.W.3d at 271.

A search warrant must be accompanied by a sworn affidavit that sets forth substantial facts establishing probable cause. *See* TEX. CODE. CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2011). An affidavit supporting a search warrant is sufficient if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *See State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The affidavit must set forth sufficient facts to establish probable cause that: (1) a specific offense has been committed; (2) the item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense; and (3) the item is located at or on the person, place, or thing to be searched. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c)

Here, the affidavit accompanying the request for a search warrant stated:

> Affiant has probable cause for said belief [that cell phone text messages and call detail records could contain critical information indicating the suspect committed the offense] by reason of the following facts: I, the affiant, Detective Steven David #4559, am a peace office [sic] for the Dallas Police Department, Dallas County, Texas, and I am currently assigned to the Crimes Against Persons Division as a homicide detective. I have been a peace officer for 29 years. *On June 19, 2011, complainant Shirley Kelly was found shot to death inside her apartment located at 8613 Old Hickory Trail #2207 Dallas, Dallas County Texas. Detectives interviewed the complainant's son, Sherrod Kelly[,] who was living with her at the time. He gave detective information regarding a boyfriend she had recently been seeing by the name of Steven Robinson who is target number 214-715-1056. He stated that he has been calling her and texting her insistently [sic] with threatening texts towards her. He also stated that her cell phone, target number 214-259-5123[,] was missing. Detectives believe that the requested data will assist in the investigation of this offense.* Wherefore, Affiant asks for issuance of a warrant to examine text messages and call detail records that were sent or received from the above listed phone numbers, **214-715-1056 and 214-259-5123, from the dates of April 19, 2011 through June 19, 2011**, that may indicate that the suspected communicated and establishing that he committed this offense.

Robinson argues the affidavit was insufficient because it "failed to allege that a specific offense had been committed;" the detective's statement that the complainant "was found shot to death" could be interpreted to mean the complainant committed suicide. We disagree.

While it might have been a better practice for Detective David to state the complainant was murdered or killed by another person, we do not focus on whether other facts could or should have been included in the affidavit. *See Duarte*, 389 S.W.3d at 354. A commonsensical and realistic interpretation of the detective's statement that the complainant "was found shot to death" is that she was murdered. Further, the code does not require that the affidavit allege that a specific offense was committed. Rather, the code requires the affidavit provide sufficient facts to establish probable cause that a specific offense was committed. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c). We conclude the affidavit's language that the complainant "was found shot to death," particularly when read in conjunction with the other statements in the affidavit, was sufficient to establish probable cause that a specific offense was committed.

Robinson next argues the affidavit did not allege the evidence sought constituted evidence of a crime or that Robinson committed the crime. Again, the code does not require the affiant state facts showing the property or items to be searched for constitute evidence of the offense or evidence that a particular person committed the offense; the code requires the affidavit set forth facts to establish *probable cause* that the property or items to be searched for constitute evidence of the offense or evidence that a particular person committed the offense. *See id.* The affidavit stated that the complainant's son, who lived with her, provided the detective with information that the complainant had been seeing Robinson, Robinson "had been calling her and texting her insistently [sic] with threatening texts towards her," and the complainant's cell phone was missing. The son also provided the phone numbers of the complainant and Robinson, the same phone numbers for which the detective sought a warrant.

Particularly when taken in light of the affiant's statement that the complainant had been shot to death, the magistrate could infer from these statements there was probable cause that the phone records would contain evidence of the offense or evidence that Robinson committed the

offense. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c); *Duarte*, 389 S.W.3d at 354. The magistrate could have concluded that the same person who texted the complainant "insistently [sic] with threatening text[]" messages was the same person who was responsible for her death, particularly in light of the fact that the complainant's cell phone, which might have contained the text messages, was missing from the crime scene.

Finally, Robinson asserts the warrant is not valid because the signature of the authorizing judge is illegible and, when David testified before the trial court, he could not recall the name of the judge who signed the warrant. The warrant was signed, and in typeface under the signature, the warrant states: "DISTRICT JUDGE, DALLAS COUNTY, TEXAS." David testified that a district judge in Dallas County signed the warrant.

Robinson concedes in his brief that a district judge in Dallas County would be qualified to issue the warrant. *See* TEX. CODE CRIM. PROC. ANN. art. 18.01(c). He argues "there is insufficient evidence from the "four corners" of the affidavit to determine whether it was a district judge who actually signed the warrant" because the signature on the warrant is illegible and the detective who obtained the warrant—and testified before the trial court—could not identify which judge signed the warrant.

We review the trial court's findings of fact in a motion to suppress with deference. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011). Rather than performing our "own fact-finding mission," we limit our factual review "to determining whether the trial court's findings were reasonable in light of the evidence presented. If these findings are reasonable, the appellate court must defer to the trial court." *Id.*

The Code of Criminal Procedure does not require the warrant to identify the name of the judge or for his signature to be legible. Rather, the code requires the warrant be issued by one of the judges listed in article 18.01(c), which would include a district judge in Dallas County. To

deny Robinson's motion to suppress, the trial judge would have had to conclude the warrant was signed by a district judge in Dallas County. The warrant presented to the trial court stated it was executed by a district judge in Dallas County, and the detective's testimony was consistent with the statement in the warrant. In light of the evidence presented, this conclusion was reasonable. *See id.*

We overrule Robinson's first and second issues.

In his third issue, Robinson asserts the trial court abused its discretion by denying his motion for mistrial "following multiple attempts by the State to elicit incriminating hearsay information." We review a trial court's ruling on a motion for mistrial for an abuse of discretion, and uphold the court's ruling if it was within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77. In most instances, an instruction to disregard will cure the error. *See Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000).

Although Robinson's counsel made numerous hearsay objections, which the trial court sustained, he only made one request that the trial court instruct the jury to disregard the testimony, which the trial court did. Generally, a failure to request additional relief after an objection is sustained preserves nothing for review. *Unkart v. State*, 400 S.W.3d 94, 98-99 (Tex. Crim. App. 2013). To the extent Robinson now argues the hearsay statements to which he objected, but did not seek an instruction to disregard and did not move for a mistrial on, form the basis of his complaint on appeal, he has waived those alleged errors.

The only testimony on which error was preserved was a question from the State to David:

Q.     Did you ever get information that he [Robinson] had, in fact, possessed a gun?
A.     Yes.
       [Defense counsel]:     Judge, that calls - - question calls for hearsay.
       THE COURT: Sustained.

Defense counsel then requested a conference outside of the presence of the jury during which he informed the Court he intended to ask the court to instruct the jury to disregard "the last question and the last answer" and he would seek a mistrial when the jury was returned to the courtroom. When the jury returned to the courtroom, defense counsel stated: Just so the record is complete, we would ask that the question that was asked a long time ago outside - - or in the presence of the jury, the court would instruct the jury not to consider the last question or the answer for any purpose whatsoever." The court so instructed the jury. Defense counsel moved for a mistrial "based upon the totality of the circumstances at this time;" the trial court denied this request.

Assuming the objected-to testimony was hearsay, the same testimony was already before the jury. At trial, Robinson's brother testified without objection:

Q.     . . . did anybody ask you about whether or not the Defendant had a gun?
A.     Yes, the detective did.
Q.     What did you tell him?
A.     Yes.
Q.     You're sure of that?
A.     Yes.

Because the testimony about which Robinson complains on appeal had been admitted without objection earlier in the trial, we cannot see how David's testimony on the same subject was "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins*, 135 S.W.3d at 77. We conclude the trial court did not abuse its discretion by denying the motion for mistrial. We overrule Robinson's third issue.

In his fourth issue, Robinson argues the evidence is insufficient to support the trial court's order that he pay $219 in court costs. Therefore, Robinson argues, the judgment should be reformed to delete the court costs. Because the clerk's records did not contain a bill of costs, we ordered the Dallas County District Clerk to file supplemental records containing the certified bill of costs associated with this case. The clerk did so, filing two supplemental clerk's records. *See* TEX. R. APP. P. 34.5(c)(1) (stating rules of appellate procedure allow supplementation of clerk's record if relevant item has been omitted).

Robinson makes two objections to the supplemental records. He first complains the clerk did not file a "proper bill of costs" because it is an unsworn, unsigned computer printout. While the code of criminal procedure requires a record be kept, it does not specify the form of the record except to state that it must be certified and signed "by the officer who charged the costs or the officer who is entitled to receive payment for the cost." TEX. CODE CRIM. PROC. ANN. art. 103.001, .006; *Coronel v. State,* No. 05–12–00493–CR, 2013 WL 3874446, at *4 (Tex. App.—Dallas July 29, 2013, no pet.). The district clerk's supplemental record contains a "Bill of Costs Certification" containing the costs that have accrued to date; the documents are certified and signed by the clerk. Because the documents meet the mandate of the code of criminal procedure, we conclude Robinson's first objection that the bill of costs is not "proper" lacks merit. *See id.* at *4

Robinson also complains the record does not indicate the bill of costs was filed or brought to the trial court's attention before costs were entered. We previously addressed and overruled this argument in *Coronel*. *See id.* at *5.

With the supplemental records containing the bill of costs now before us, we conclude Robinson's complaint that the evidence is insufficient to support the imposition of costs lacks

merit. *See id*. at *4-5; *Franklin v. State,* 402 S.W.3d 894, 894 (Tex. App.—Dallas 2013, no pet.). Accordingly, we overrule Robinson's fourth issue.

In his fifth and sixth issues, Robinson asserts the trial court's judgment incorrectly names the presiding judge and lead prosecutor, and he requests we correct the judgment. The State agrees. This Court has the authority to correct the trial court's judgment to make the record speak the truth when the Court has the necessary data and information to do so. *See* TEX. R. APP. P. 43.2; *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We sustain Robinson's fifth and sixth issues. We modify the judgment to reflect that the Honorable Tracy Holmes was the judge who presided over the trial and Schwannah McCarthy was the lead prosecutor at trial.

As modified, we affirm the trial court's judgment.


/Jim Moseley/
JIM MOSELEY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120859F.U05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN GLENN ROBINSON, Appellant

No. 05-12-00859-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court, Dallas County, Texas

Trial Court Cause No. F11-56945-w.

Opinion delivered by Justice Moseley.

Justices Lang and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is modified as follows:

We **STRIKE** Hon. Andy Chatham as "Judge Presiding" and **MODIFY** the judgment by adding Hon. Tracy Holmes as the presiding judge.

We **STRIKE** Messina Madson as "Attorney for State" and **MODIFY** the judgment by adding Schwannah McCarthy as the attorney for the State.

As modified, the judgment is **AFFIRMED**.

Judgment entered this 7th day of November, 2013.

/Jim Moseley/

JIM MOSELEY
JUSTICE