**Affirmed and Majority and Concurring Opinions filed February 24, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-01021-CR
### NO. 14-13-01022-CR

## PAUL A. CRAYTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 212th District Court
### Galveston County, Texas
### Trial Court Cause Nos. 11-CR-2593 & 11-CR-2594

## C O N C U R R I N G   O P I N I O N

On the morning of voir dire, a Galveston County newspaper reported that the trial court had suppressed evidence of a firearm and was considering suppressing a "kill list"—a list of names with the complainant's name struck through. Appellant complained that the newspaper article was unfairly prejudicial and twice moved for a mistrial. The majority addresses the motions for mistrial, but not the merits of appellant's broader Sixth Amendment argument, which is the real focus of his

appeal. I agree that appellant's conviction should be affirmed but for different reasons than those addressed by the majority. For the reasons that follow, I respectfully concur.

## I. Preservation of Error

Appellant argues in his second issue that he was denied his Sixth Amendment right to an impartial jury. His argument is based entirely on the newspaper article and the adverse publicity that it created.

The majority narrowly construes appellant's second issue as alleged error in the denial of the motions for mistrial. As for appellant's broader complaints regarding the adverse publicity, the majority holds that these were waived because there was no specific request for a continuance or a change of venue. Because appellant's complaints focus on a newspaper article that was published on the morning of voir dire, and because defense counsel had not even seen the article until after the voir dire began, I would not hold that appellant waived his complaints by only moving for a mistrial.

### A. The First Motion for Mistrial

Defense counsel was advised of the newspaper article before the voir dire had begun, but did not obtain a copy of the article until the lunch break later that day, after the trial had already commenced. Before the venire panel re-entered the courtroom, counsel clearly stated the grounds of the objection: "Judge, [the article] is so prejudicial that I don't see how [appellant] can get a fair trial with that out there in the public." Counsel offered the article into evidence for the judge and asked for a mistrial.

The State responded that it could question the venire panel about its exposure to the newspaper article. If members of the panel had read the article, the

State proposed that it should ask "whether or not they can listen to what evidence is presented to them in trial and not anything that they read in the newspaper." Defense counsel countered, "Judge, one of my fears is we start this trial, the jurors that haven't read this news article and a couple of days into it, some family members say, 'Hey, you're on that hit list case, aren't you,' because that's what the public is going to know this as after this point." The trial judge denied the motion for mistrial.

Generally, when a defendant is surprised by some event at trial, he should request a continuance to allow time to prepare or to find witnesses to rebut the surprise. *See, e.g.*, *Wood v. State*, 18 S.W.3d 642, 650 (Tex. Crim. App. 2000). A continuance of this nature is usually short and requires that the trial be put on hold. A continuance would not have been an appropriate remedy in this case because the trial had already begun. The judge would have had to continue the case for weeks or months to allow the taint of the publicity to pass. It is simply not practical to send an entire venire panel of 80 people away for months. A mistrial is more appropriate.

The majority incorrectly assumes that if the trial judge had granted a mistrial, then the case would have restarted immediately with a new venire panel. Nothing in our rules of procedure requires a trial judge to immediately restart a case after a mistrial. If the judge believed that the adverse publicity required a mistrial, the parties would have discussed how long to wait for a reset.

A defendant is not required to file a change of venue in response to adverse publicity. Any measure to delay the trial until the taint of the publicity has passed is sufficient. *See Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) ("[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another

3

county not so permeated with publicity."); *Lopez v. State*, 628 S.W.2d 77, 81 (Tex. Crim. App. [Panel Op.] 1982); *Henley v. State*, 576 S.W.2d 66, 75–76 (Tex. Crim. App. 1978). By objecting to the adverse publicity and asking for a mistrial, appellant preserved his broader complaint that he was denied a right to an impartial jury.

### B.    The Second Motion for Mistrial

The majority mischaracterizes the second motion for mistrial as a motion based solely on the comments of one veniremember, and the majority faults defense counsel for not requesting an instruction to disregard.[1] I believe that the second motion was a continuation of the earlier motion for mistrial, focusing on the adverse effects of the newspaper article.

At the time of the second motion, counsel knew that at least five veniremembers had seen the newspaper article and four of them were biased against appellant as a direct result of the article. Counsel referenced the comments of the "jurors" (plural) when the motion was made, clearly arguing that the newspaper article had unfairly prejudiced appellant. Counsel used the example of

---

[1] The majority cites two cases for the authority that counsel must ask for an instruction to disregard a veniremember's comments during voir dire. *See Unkart v. State*, 400 S.W.3d 94 (Tex. Crim. App. 2013); *Young v. State*, 137 S.W.3d 65 (Tex. Crim. App. 2004). While I acknowledge that *Young* seems to require that counsel must ask the judge to instruct the venire panel to disregard a veniremember's comment, I think that this is an unworkable situation that should be revisited by the Court of Criminal Appeals. If a judge grants defense counsel's request for an instruction to disregard, the instruction will in all likelihood cause the other veniremembers to dislike defense counsel, and perhaps even the accused. An instruction could also lead veniremembers to stop volunteering information or answering questions if they believe that the judge might instruct the other panel members that their answer must be disregarded. The better way to cure an offensive comment from the venire panel is by having the judge instruct the panel on what the law is or to correct a factual misstatement—not an instruction to disregard. In fact, the judge here thought that she had already done that by telling the panel that the newspaper was not always right.

4

the last veniremember to support the motion, but the motion was not focused on that one comment alone.

## II.     No Abuse of Discretion

A trial court's ruling on a motion for mistrial is reviewed for an abuse of discretion. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). In determining whether the trial court abused its discretion in this case, I will draw on the reasoning of cases where a trial court denied a continuance in the face of adverse publicity and those cases that discuss a change of venue due to adverse publicity. Both types are analyzed under an abuse of discretion standard. *See Esquivel v. State*, 595 S.W.2d 516, 519 (Tex. Crim. App. 1980) (continuance); *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007) (change of venue).

Reviewing courts have examined several factors when deciding whether pretrial publicity has unfairly prejudiced a defendant's right to an impartial jury. One factor is whether the information disseminated was factual and informative or inaccurate and inflammatory. *See Esquivel*, 595 S.W.2d at 519; *Gonzalez*, 222 S.W.3d at 451. A second factor is whether the same information would ultimately be presented to the jury. *See Gonzalez*, 222 S.W.3d at 452 & n.29. Another factor is whether the State was responsible for the publicity. *See Henley*, 576 S.W.2d at 71–72. Courts also consider whether the publicity was widespread or pervasive, whether the jurors had actually learned of the publicity, and whether the issue can be handled by instructions. *See Gonzalez*, 222 S.W.3d at 450. Finally, courts examine what was known at the time of the motion and what was later known to see if any constitutional violation occurred. *Id.* at 450–51.

The article in this case was published in *The Daily News*, and it was featured on the first page of the newspaper, above the fold. The article included a picture of appellant, and its headline read "Firearm, 'kill list' at center of hearing." The

5

article detailed the events of the previous day's pretrial hearing on the motion to suppress. The opening paragraph began: "A firearm seized during a homicide investigation apparently won't be presented as evidence during the trial of a murder defendant, who was accused of keeping a kill list."

The article described how and where the suppressed firearm was found, and the judge's ruling that the firearm would not be admitted at trial. The article also discussed whether the judge would suppress a journal entry that contained a list of nineteen names of people who had been labeled as "snitches." During the pretrial hearing, the prosecutor described the journal entry as a "kill list," and said that the complainant's name was scratched through on that list. That same description was repeated in the newspaper article, which said that the judge had still not ruled on whether the "kill list" would be admitted.

Before voir dire had begun, the judge granted a motion to suppress the "kill list." The prosecutor admitted that she had misspoken the day before, clarifying that the complainant's name had not been struck through on the list. The prosecutor also informed the judge about the newspaper article. Defense counsel had not seen the article at that point, but following the afternoon break, counsel approached the bench and objected to the adverse publicity.

Some of the factors outlined above weigh in favor of the mistrial: the information was not accurate; the information would not have been presented to the jury because it was suppressed; and it was the State that was responsible for the most unfairly prejudicial information—describing it as a "kill list" and that the complainant's name was struck through on the list. However, there is no evidence in the record regarding the number of subscribers to *The Daily News* or whether many copies were sold that day. There was no testimony from any witness that appellant would have been unable to get a fair trial that day. The judge appeared to

be familiar with the newspaper and may have known that it had a limited circulation. The judge may have also had previous venire panels with a similar publicity issue, and knew that only a small percentage of the panel would have actually read the article. In fact, it was revealed during voir dire that only 12 members of the 80-member panel had read the article. No one was allowed to discuss the content of the article in front of the other panel members. All who had seen the article were struck from the jury. The judge instructed the actual jury panel numerous times to not read any articles about the case or discuss the case with anyone. I would conclude that the adverse publicity did not prevent appellant from obtaining a fair trial with an impartial jury, and therefore, the trial judge did not abuse her discretion by denying the motions for mistrial.


/s/     Tracy Christopher
        Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby. (Frost, C.J., majority).
Publish — Tex. R. App. P. 47.2(b).

7