

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0309-20

### DARREN LAMONT BIGGERS, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE SEVENTH COURT OF APPEALS COOKE COUNTY

**KELLER, P.J., filed a dissenting opinion.**

The legislature has decided that possession of codeine in cough syrup without a prescription should be penalized less harshly than possession of codeine that is not in cough syrup. Possession of codeine is a penalty group 4 substance when it is combined with another medicine, the other medicine is present in a proportion sufficient to confer valuable medicinal qualities (beyond those conferred by codeine alone), and the codeine does not exceed a certain proportion of the mixture. If the other medicine is not present in a sufficient proportion to confer valuable medicinal qualities, then codeine is in a *higher* penalty group—penalty group 1—and its possession is a *greater* offense.

So the other medicine being present in a sufficient proportion is a *mitigating* fact that lowers the degree of the offense. What happens when the record does not contain enough information from which to rationally conclude that the mitigating fact is true or false? That is, what happens if the record shows that the codeine is mixed with another medicine but does not show *whether or not* the other medicine is present in a sufficient proportion to confer valuable medicinal qualities? I would affirm the conviction for the charged offense, possession of codeine in penalty group 4. A majority of the members of the Court came to that conclusion in *Sanchez v. State,*[1] the Court has never said otherwise until now, and the *Sanchez* conclusion makes sense in light of the statutory scheme.

> **1. A majority of judges in *Sanchez* concluded that the State need not prove the "medicinal qualities" mitigating fact to support a conviction for the penalty group 4 offense.**

In *Sanchez*, the chemist testified that promethazine was present in the codeine mixture but did not testify as to the actual concentration.[2] The Court, however, concluded that the jury could have rationally inferred from the record that the promethazine was present in a sufficient amount to confer valuable medicinal qualities and that it was not necessary for the expert to quantify the concentration.[3] Two concurring opinions concluded that the State did not have to show concentration or valuable medicinal qualities, and the two of them combined garnered the votes of five judges.[4] Judge Johnson did not agree with the Court's conclusion that the State had proven

---

[1] 275 S.W.3d 901 (Tex. Crim. App. 2009).

[2] *Id.* at 903-05.

[3] *Id.* at 904-05.

[4] *Id.* at 905-07 (Keller, P.J., concurring, joined by Womack, Holcomb, and Cochran, JJ.), 907-08 (Johnson, J., concurring, joined by Holcomb and Cochran, JJ.).

valuable medicinal qualities, but she concluded that it did not matter because "that failure accrued to the benefit of the appellant" in that it "saved appellant from a felony penalty range."[5] She commented that if the chemist had "ascertained the proportion of promethazine, it may have been too small to satisfy the statute and thereby enable the state to seek a greater punishment."[6] My concurrence agreed with the Court that valuable medicinal qualities had been established, but I also concluded that it did not matter—because the bottom line was that the defendant's complaint was that "he may have been guilty of a greater offense than that for which he was convicted."[7] I emphasized that the proportion of the non-codeine medicine was a mitigating factor that the State was explicitly required to negate to prove the penalty group 1 offense and reasoned that this made the penalty group 4 offense a lesser-included offense of the penalty group 1 offense.[8] I analogized to the old voluntary manslaughter offense with its sudden passion mitigating element and argued that this sort of mitigating element must be disproven by the State for the greater offense (at least if raised) but need not be proven for the lesser offense.[9] I pointed out that the view was more strongly supported in the codeine situation because negating penalty group 4 status was an explicit requirement of the penalty group 1 offense.[10]

**2. The majority view articulated in the concurring opinions in *Sanchez* should**

---

[5] *Id.* at 907-08 (Johnson, J., concurring).

[6] *Id.* at 908.

[7] *Id.* at 906-07 (Keller, P.J., concurring).

[8] *Id.* at 906.

[9] *Id.* at 906-07.

[10] *Id.* at 907.

be viewed as binding precedent.

We have stated that a "'fractured decision' is a judgment by an appellate court that has no majority opinion."[11] A fractured decision is binding authority "if, and to the extent that, a majority holding can be ascertained from the various opinions in the case."[12] This is true "[e]ven if the rationales seem disparate, if a majority of the judges agree on a particular narrow ground for or rule of decision."[13] We have never said that a fractured decision with a holding cannot coexist with a majority opinion with a holding, and there is no logical reason to conclude that they cannot coexist.

### 3. The *Miles* case does not conflict with the view of the majority of the judges in *Sanchez* that the State need not prove the mitigating facts to support a conviction for a penalty group 4 offense.

In *Miles v. State*, there was ambiguity with respect to what codeine offense the defendant was charged with.[14] The Court concluded that Appellant was charged with possession of codeine in penalty group 1.[15] The Court further concluded that proving its penalty group 1 charge required the State to prove that the substance was not in penalty group 3 or 4.[16] And the Court concluded that the State failed to do that because the record did not establish that promethazine "was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable

---

[11] *Unkart v. State*, 400 S.W.3d 94, 100 (Tex. Crim. App. 2013).

[12] *Id.*

[13] *Id.* at 100-01.

[14] 357 S.W.3d 629, 631-33 (Tex. Crim. App. 2011).

[15] *Id.* at 636-37.

[16] *Id.* at 637.

medicinal qualities."[17]

The Court did *not* say that the record would be insufficient to support a conviction for possession of penalty group 4 codeine.[18] The Court rendered an acquittal,[19] but at the time, we had not decided *Bowen v. State*, which authorized reformation to a lesser-included offense even when the lesser-included offense was not submitted or requested.[20] In my dissent, I suggested that the Court wait until *Bowen* was decided, but the Court chose not to do so, and its decision to acquit without considering the lesser-included offense was supported by the caselaw at the time.[21] I disagreed with the Court's conclusion that Appellant was charged with possessing codeine in penalty group 1 and contended that he was, instead, charged with possession of codeine in penalty group 3 or 4.[22] I based my conclusion on a caption in the indictment that read "PG 3/4,"[23] but the Court was not convinced.[24] My dissent did *not* disagree with the Court's conclusion about what was required to prove a penalty group1 offense—that the State had to prove that the codeine did *not* fall within penalty group 3 or 4 due to the concentration of the codeine or due to the non-codeine medicine not

---

[17] *Id.* at 637-38.

[18] *See id.* at 630-38.

[19] *Id.* at 638.

[20] *See Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012).

[21] *See Miles*, 357 S.W.3d at 645 n.18 (Keller, P.J., dissenting).

[22] *Id.* at 643-44.

[23] *Id.*

[24] *Id.* at 637 (Court's op.).

being present in sufficient proportion to confer valuable medicinal qualities.[25]

I went on to conclude that the evidence was sufficient to show a penalty group 4 offense in response to Judge Cochran's concurring opinion suggesting otherwise.[26] Judge Cochran had joined my concurring opinion in *Sanchez*, but in *Miles* she stated that she agreed with only the proposition that no specific proportion need be proven, and Judge Johnson, by joining Judge Cochran, apparently had rethought her position.[27] But Judge Cochran's concurring opinion in *Miles* garnered only three votes, and her statements in that opinion could not retroactively cancel her vote in a majority holding in an earlier case. The view expressed in my *Sanchez* concurrence was not limited to saying that proportion need not be quantified, nor was the view expressed in Judge Johnson's concurrence. Both concurrences clearly staked out the position that the State, to prove a penalty group 4 offense, did not need to prove that the non-codeine medicine was in a sufficient proportion to confer valuable medicinal qualities.

### 4. Even if only persuasive, the five-judge view of the concurring opinions in *Sanchez* should be accepted.

Even if the five-judge view expressed in the *Sanchez* concurrences is only persuasive authority, there are good reasons to accept that view. The statute listing penalty group 1 substances lists "Codeine not listed in Penalty Group 3 or 4."[28] The penalty group 4 statute specifies that codeine is a penalty group 4 substance if another medicine is mixed with the codeine in sufficient

---

[25] *See id.* at *passim*.

[26] *Id.* at 644-45 (Keller, P.J., dissenting).

[27] *See id.* at 642 n.12 (Cocrhan, J., concurring).

[28] TEX. HEALTH & SAFETY CODE § 481.102(3)(A).

proportion to confer valuable medicinal qualities and the codeine does not exceed a certain proportion of the mixture (200 mg/100 ml or 200 mg/100 g).[29] Thus, assuming the same amount of the total mixture,[30] the only difference between a penalty group 1 codeine possession offense and a penalty group 4 codeine possession offense is the presence or absence of the mitigating facts that cause codeine to fall within penalty group 4.

To be clear, there are *two* mitigating facts required for penalty group 4 status, even though only one of those is at issue here: (1) the presence of the other medicine in sufficient proportion to confer valuable medicinal qualities, and (2) codeine not exceeding a certain proportion of the mixture. If the first mitigating fact is absent, then codeine is a penalty group 1 substance. If only the second mitigating fact is absent, then codeine is a penalty group 1 or 3 substance depending on the proportion of *codeine* in the mixture.[31]

We should not overlook the second mitigating fact of codeine concentration. I can see no justification in the structure of the relevant statutes for treating the two mitigating facts differently. If the State has to prove the first for a penalty group 4 substance, then it will also have to prove the second. What happens if the State offers evidence of the presence of promethazine in sufficient proportion to confer valuable medicinal qualities but fails to offer any evidence of the actual proportion of codeine in the mixture, other than that there was some? The statute says nothing about quantifying the non-codeine medicine, but it *does* specify quantifying the codeine proportion of the

---

[29] TEX. HEALTH & SAFETY CODE § 481.105(1).

[30] Offenses under both penalty groups can differ by the amount of the substance possessed, including adulterants and dilutants. *See* TEX. HEALTH & SAFETY CODE §§ 481.115, 481.118.

[31] *See* TEX. HEALTH & SAFETY CODE §§ 481.104(4), 481.105(1).

mixture. Under the Court's rationale today, such a defendant would have to be acquitted entirely, even though we would *know* that he had to have possessed a proportion of codeine that was *at least* a penalty group 4 substance (but could be more than that). Although perhaps less obvious, the same is true of the first mitigating factor—the proportion of non-codeine medicine—if the record is unclear about whether that proportion was sufficient to confer valuable medicinal qualities, we still *know* that the codeine would *at least* be a penalty group 4 substance, though it might be a higher penalty group.

This situation is analogous to the old voluntary manslaughter statute, which contained all the elements of murder plus the mitigating element of sudden passion arising from an adequate cause.[32] In *Moore v. State*, we held that voluntary manslaughter was in fact a lesser-included offense of murder due to having a lesser culpable mental state.[33] In doing so, we overruled a prior case that held the evidence to be insufficient to support a conviction for voluntary manslaughter because sudden passion had not been proven.[34] That prior case, *Bradley v. State*, viewed the situation much as the Court views the present case: "The State had the burden to disprove sudden passion beyond a reasonable doubt to convict for murder, and the burden to prove the existence of sudden passion beyond a reasonable doubt to convict for voluntary manslaughter."[35] *Moore* rejected that view in the voluntary-manslaughter context, and we should do so here.

---

[32] *See* TEX. PENAL CODE § 19.04(a) (West 1992). For brevity and ease of reference, I sometimes refer to the mitigating element by the label "sudden passion."

[33] 969 S.W.2d 4, 9-10 (Tex. Crim. App. 1998).

[34] *Id.* at 10 (overruling plurality opinion in *Bradley v. State*, 688 S.W.2d 847 (Tex. Crim. App.1985)).

[35] *Id.* at 9 (discussing *Bradley*).

Although *Moore* did not adopt the reasoning of the even earlier case of *Braudrick v. State*,[36] the reasoning in that earlier case applies more strongly to the present case than to the murder/voluntary manslaughter situation. In *Braudrick*, the Court concluded that the negation of the "sudden passion" element of voluntary manslaughter was an implied element of murder.[37] So, in the Court's view, voluntary manslaughter was a lesser-included offense of murder because it differed only by lacking an element of murder—it lacked murder's implied element of *not* having "sudden passion."[38] The Court further concluded that "[t]he distinguishing feature between murder and voluntary manslaughter is not a fact that must be proven beyond a reasonable doubt to establish voluntary manslaughter."[39] The Court further held that, if the issue is raised, it must be disproven to establish murder, and "a reasonable doubt on the issue requires acquittal on the murder charge and allows conviction only for voluntary manslaughter."[40]

A possible hole in the court's reasoning in *Braudrick* was the idea of having an implied element. *Moore* perhaps implicitly criticized *Braudrick* by referring to the notion "that murder had an unwritten, implied element of lack of sudden passion."[41] But in the present case, we do not have an "implied element" problem. Penalty group 1 codeine is explicitly defined as codeine that does not fall within penalty group 3 or 4. So, under *Braudrick*'s reasoning, possession of penalty group

---

[36] 572 S.W.2d 709 (Tex. Crim. App. 1978).

[37] *See id.* at 710.

[38] *Id.*

[39] *Id.* at 711.

[40] *Id.*

[41] 969 S.W.2d at 9.

4 codeine lacks an element contained in possession of penalty group 1 codeine—it lacks the penalty group 1 element of *not* being in penalty group 4 (because it *is* in penalty group 4). Analytically, the penalty group 4 offense is a lesser-included offense of the penalty group 1 offense because it differs only by having fewer elements.[42] And under *Braudrick*'s reasoning, because the mitigating characteristics is what makes it a lesser included offense, the mitigating characteristics of penalty group 4 codeine do not have to be proven beyond a reasonable doubt to convict on a penalty group 4 offense, but they must be disproven beyond a reasonable doubt to convict on a penalty group 1 offense.

*Braudrick*'s conclusion about what has to be proven in this sort of lesser-included offense situation seems to follow from other generally accepted principles of law. Legally, a lesser-included offense is included within the proof of the charged offense, which is why the first prong of the test for obtaining a lesser-included offense is that it "be included within the proof necessary to establish the greater offense for which the defendant is on trial."[43] We have said elsewhere that, "Proof of a greater offense will sustain a conviction for a lesser included offense."[44] So establishing the greater offense of possession of penalty group 1 codeine would necessarily establish the lesser-included offense of possession of penalty group 4 codeine.

Moreover, it is a standard jury instruction that if the jury has a reasonable doubt as to whether

---

[42] *See* TEX. CODE CRIM. PROC. art. 37.09(1). It might also be possible to characterize possession of penalty group 4 codeine as a lesser included offense on the basis that it differs from the greater offense "only in respect that a less serious injury or risk of injury to the same . . . public interest suffices to establish its commission." *See id.* art. 37.09(2).

[43] *See Grey v. State*, 269 S.W.3d 785, 788 (Tex. Crim. App. 2008).

[44] *Daniel v. State*, 668 S.W.2d 390, 394 (Tex. Crim. App. 1984).

the defendant is guilty of the charged offense or of the lesser-included offense, "then [it] must resolve that doubt in the defendant's favor and find him guilty of the lesser offense."[45] That proposition of law applies here. Depending on the proportions of codeine and promethazine, the substance falls either within penalty group 1, 3, or 4. There does not exist a "no-man's land" where someone can possess a combination of codeine and promethazine and it not fall within one of those three penalty groups. At worst, the record lacks clarity about which of the three penalty groups the State has proven. Under those circumstances the evidence should be upheld as sufficient on the lowest grade offense—possession of penalty group 4 codeine.

Of course, the State has to prove that the substance lacks the mitigating characteristics of penalty group 4 codeine in order to obtain a conviction for penalty group 1 codeine. As the Court explains, the State has not done this. So the State cannot obtain a conviction for penalty group 1 codeine. But Appellant was convicted of possessing penalty group 4 codeine and the evidence is sufficient to support that conviction. Because the Court holds otherwise, I respectfully dissent.

Filed: September 22, 2021

Publish

---

[45] *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).