**AFFIRM; and Opinion Filed May 12, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00508-CR

**LENNIE P. EARBIN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-80478-2012**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Appellant Lennie P. Earbin pleaded not guilty to the offenses of continuous sexual abuse of a child and indecency with a child, both involving his step-granddaughter. A jury convicted appellant of continuous sexual abuse of a child, but acquitted him of indecency with a child. The court sentenced appellant to serve 25 years in prison. In three issues, appellant complains that the trial judge wrongly instructed the venire, the evidence is insufficient to support the conviction, and there was error in the jury charge. We affirm the trial court's judgment. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.4.

### FACTUAL BACKGROUND

At the time of trial, JH was 14 years old. She testified that when she was around 10 or 11 years old, she lived in an apartment with her mother, who was there on and off; her maternal grandmother (Nana); her maternal great grandmother (Grandma); and appellant, who was Nana's

husband and JH's step-grandfather. Grandma mostly stayed in her room watching television with the door closed. Nana was a home health nurse and was gone a lot. JH's mother was also gone a lot doing her "own thing"; she gave custody of JH to Nana. Sometimes JH was home alone with appellant and Grandma, particularly after school.

JH testified that the first thing she remembered appellant doing "was putting a grape in his mouth and giving it to me from his mouth[.]" She did not think there was anything wrong with that and told Nana. Nana did not say anything, but appellant told JH that was "our little secret" and she should not tell people about it. Then she said appellant would sit in a chair and make her sit in his lap "and I would be moving and stuff." She sat "straddle[ed]" appellant, "sitting the opposite direction like face-to-face." She said if appellant "got excited," his penis "would go up" and she said she felt it "against my butt," "rubbing against my butt." This happened through their clothing. JH said appellant breathed "really hard" when that was going on. JH testified that sometimes appellant "put me on the bed" and closed the door. She said he touched her with his hands on her thighs and "butt" and "right before my vagina." She said it happened "many" times, "for a really long time, for years." She said appellant touched her in the garage, living room, and in her bedroom. When he was on the couch in the living room, he would pull JH "towards him over and over again to, I guess, feel." She said she felt his penis "rubbing against my butt." She also testified that appellant touched her "butt" with his hand through her underwear.

JH also testified that on about two occasions appellant "pushed me 'til I was on my knees and he put my face down there, and he would make me rub my face on him." His hand was on the back of her head, moving her head while she struggled to get away. She felt his penis with her nose and mouth, over his underwear. And she said appellant would also grab her hand and put it "down there over his clothing." She said she could feel his penis with her hand.

–2–

JH talked about times in her room when appellant tied a blanket to the upper bunk bed and draped it "like curtains." He got on one side of the blanket and JH was on the other side. He told JH to "bite the part of the blanket that was up high that poked out or something." She said this happened many times and sometimes they were on "different sides" of the bunk beds. She said she would "end up having to bite whatever part it was[.]" She said she did not know what he made her bite. He told JH it was just a game and not to tell anyone.

JH testified that all this sexual contact was through clothing. And when she was asked whether appellant's penis ever touched her vagina, she said no. She said she never felt appellant's penis on her vagina or near her vagina.

JH testified that she loved school and it "was freedom for me from coming home and being touched." One day in late April 2011 when JH was with Nana, she told Nana about some of the things appellant had been doing to her. JH said "[i]t was extremely hard" to tell Nana, because that was her husband. But she felt "relieved" after she told. She said she was closer to Nana than her mother, but Nana started acting "distant" to JH. JH said she eventually told her mother, who called the police, and an investigation was started.

In June 2011, appellant sent his step-daughter, JH's mother, a text message stating:

Good Morning Mininia! Last night I called my wife and came clean about what happen [sic]. Now I'm apologizing to U and [JH] if U will allow me 2. I did touch [JH] in an inappropriate way, and I'm sorry. I do not want to minimize what I've done but u need [sic] it was not for no long period of time. If u like I can call u and look at u face 2 face to apologize next time I'm home. I know that what ever [sic] relationship we had has been destroyed by me and I'm deeply sorry. I pray that u can find it in u r heart to forgive me somewhere in the future. I realize I need help! I'm asking God almighty to help all of us through this time of heartache. I Love U, [JH], and Jo-Jo!!! For real! PaPa!!!

At some point, JH learned that appellant was being accused of raping her. She said appellant did not rape her, he molested her. She agreed to make a recording in which she recanted the accusations; she said she did it for Nana. But she said she felt terrible afterwards

–3–

because she lied on the recording. She said everything that she testified about in trial that appellant did to her was true.

SUFFICIENCY OF THE EVIDENCE

In issue two, appellant argues that the evidence is insufficient to support the conviction for continuous sexual abuse of a child.

**Standard of Review**

When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id*. If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). This standard is the same for both direct and circumstantial evidence. *Id*.

**Analysis**

A person commits continuous sexual abuse of a child if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . .; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

TEX. PENAL CODE ANN. § 21.02(a) (West Supp. 2014). The jury is not required to agree on which specific act of sexual abuse the defendant committed; it is sufficient if the jury agrees "that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id*. § 21.02(d). A child's testimony alone is sufficient to support a

–4–

conviction for continuous sexual abuse of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2014).

"[A]cts of sexual abuse" for purposes of continuous sexual abuse of a child include indecency with a child and aggravated sexual assault of a child. TEX. PENAL CODE ANN. § 21.02(c)(2), (4). The State sought to prove appellant committed continuous sexual abuse of a child through five different acts of sexual abuse. Two of those acts of sexual abuse were aggravated sexual assault of a child by sexual-organ-to-sexual-organ contact and by contact of the child's mouth to appellant's sexual organ. *See id.* § 22.021(a)(1)(B)(iii)&(v). The remaining three acts of sexual abuse were indecency with a child by contact of the child's buttocks with appellant's sexual organ, the child's genitals with appellant's hand, and the child's hand with part of appellant's genitals. *See id.* § 21.11(a)(1), (c) (West 2011).

Appellant argues that there is no evidence to support the two acts of aggravated sexual assault of a child and no evidence to support one of the acts of indecency with a child—by contact of the child's genitals with appellant's hand. Appellant does not challenge the sufficiency of the evidence with respect to the other two acts of indecency with a child, that is, by contact of the child's buttocks with appellant's sexual organ and the child's hand with part of appellant's genitals.

We have reviewed the record with respect to the two unchallenged acts of sexual abuse. The child testified that appellant made her sit on his lap and she felt his penis on her buttocks. She also testified that appellant forced her hand on his crotch and she felt appellant's penis through his clothes. Even if the evidence was insufficient to support the acts of aggravated sexual assault, an issue we do not decide, the jury could have convicted appellant of continuous sexual abuse of a child based on these unchallenged acts of sexual abuse. We resolve issue two against appellant.

## JUDICIAL COMMENTS DURING VOIR DIRE

In issue one, appellant argues that the trial court gave wrong instructions to the venire and violated his right to be presumed innocent. The State argues that appellant did not preserve this issue for review because he did not object when the comments were made and, even if he had, there was no error. Appellant concedes he did not object, but argues that no objection was required because the instructions constituted fundamental error.

### Standard of Review

Ordinarily a party must object at the time allegedly improper judicial comments are made to complain about those comments on appeal. *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). We review an allegation that a trial court made improper comments during voir dire as a question of law. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). And we review those comments in the context of the entire voir dire examination. *See In re Commitment of Wirtz*, 451 S.W.3d 462, 470 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

### The Comments

At the beginning of voir dire, the trial judge gave several opening remarks and explained the voir dire process. He gave examples of how jurors must follow the law even if they disagree with it. He also gave examples of answers that make lawyers "nervous," such as when a person has a strong religious or moral belief that cannot be set aside, because something similar has happened to the person or a family member, or because the person disagrees with the law and refuses to follow the law. Then the judge gave an example to the venire about how they do not know anything about the case they are about to hear:

> Let me give you an example about how you don't know anything about this case. [Venire member].

> [VENIRE MEMBER]: Yes, sir.

–6–

THE COURT: Where are you? There you are. Oh, you can keep your seat, that's fine. You work at Park Place Lexus over in Plano; is that right?

[VENIRE MEMBER]: That is correct, sir.

THE COURT: Well, you know a friend of mine Craig Ellis. You know Craig?

[VENIRE MEMBER]: I know the name. I don't work with him directly.

THE COURT: Okay, a prince of a guy. I knew him when he worked at another dealership. I recently sold my car and got a different car and now I'm thinking about selling my wife's car and getting a different car. Would you like to buy my wife's car for $15,000?

[VENIRE MEMBER]: Don't know anything about your wife's car. I would have to look at it, sir.

THE COURT: Let me tell you a little bit about it. The first four letters of the type of car, the make of the car is [sic] M-e-r-c. Are you ready?

[VENIRE MEMBER]: Yes, sir.

THE COURT: You want to buy it?

[VENIRE MEMBER]: No, sir.

THE COURT: All right. It's a 2007. Are you ready to buy it?

[VENIRE MEMBER]: No, sir.

THE COURT: All right. It's got 39,000 miles. Pretty low miles for a 2007.

[VENIRE MEMBER]: That is correct.

THE COURT: Are you ready to buy it?

[VENIRE MEMBER]: I'm curious.

THE COURT: You're curious. What you're trying to do right now is decide is it a Mercury or is it a Mercedes. Okay, you know more about my wife's car than you know about this case. So what's your verdict in this case?

[VENIRE MEMBER]: I don't have one, sir.

THE COURT: All right. You don't even know whether this is a criminal case or a civil case where people got in a car wreck and somebody got injured or contracts or a family divorce case. You got no idea, do you?

[VENIRE MEMBER]: No, sir, I'm in a State of Texas courtroom. That's all I know.

THE COURT: That's all you know. I promise you at the end of this part of the trial about this case you'll know absolutely the same amount as you know right now, and you're not willing to buy that car because you just don't know enough about it.

[VENIRE MEMBER]: That's correct, sir.

THE COURT: You may have heard some things you think, hum, I'm starting to draw some conclusions. I'm more interested than I was before but I'm not going to dare -- you'd be silly to tell me you'd buy her car; wouldn't you?

[VENIRE MEMBER]: I would agree with you.

THE COURT: Okay. Just like it would be silly to ask you what your verdict would be in this case until you hear the evidence in this case. So no one is going to ask you what your verdict is. Everybody is going to ask you to follow the law, okay. You should have bought her car, because I'm the one that drove the Mercury and she's the one that drives the Mercedes.

[VENIRE MEMBER]: Good choice.

THE COURT: But even though it might have been what you would have done until you know about it it's just foolish to do something until you know about it.

[VENIRE MEMBER]: I agree, sir.

THE COURT: Just like it's foolish to say what you will or will not do in this case until you know about it.

Appellant argues that "[t]he discussion continued and involved several panel members being asked direct questions by the judge. One of those involved a venire member who was asked whether he could convict based solely on the testimony of a child if he believed the child beyond a reasonable doubt. Earlier, the venire member had expressed concern that it was "one person's word against another person's word" and agreed with another venire member that "the bar is set fairly high" "when that is the only piece of evidence that you have." The judge was attempting to clarify the venire member's earlier answer and said:

> [Venire member], let me make sure you're not changing the question. The question is you believe the child beyond a reasonable doubt and you're convinced beyond a reasonable doubt of a person's guilt. Not would you be but after you've heard the evidence you are.

. . .

–8–

[The prosecutor] was asking if you're convinced beyond a reasonable doubt would you find them guilty and you said, well – you forgot about the part about you're convinced beyond a reasonable doubt and went straight to the part there's one witness and left off the part beyond a reasonable doubt you're convinced.

But if you say I'm never going to be convinced, I'm not even going to keep an open mind then that's one thing. But if you say I'll keep an open mind but I'm telling you it's going to be difficult well, that's fine.

*I would hope nobody would say, oh, it's going to be easy for me to find somebody guilty. It ought to be difficult. It ought to be difficult to find somebody not guilty. It's a difficult job.* You've got to really focus on the evidence and determine in your own mind whether you're convinced.

(Emphasis added.)

The venire member expressed concern that "it's going to be very, very difficult to convince me if it's one person's word against another person's word." The judge reminded the panel that no one had said anything about another person's word, and said:

I know it's hard not to jump ahead but just like the man who didn't want to buy my car and now he kind of does, you just got to wait to hear everything. You can't draw conclusions before you know what the evidence is because at this point you still haven't heard the evidence.

### Analysis

Appellant argues that the judge's instructions were improper because he "should have first stated that [appellant] is presumed innocent." He contends that the judge's "initial explanation" that was "hammered home with the . . . real world example, asked the jurors to put themselves into a specific fact pattern, and hold off in making a determination on the defendant's guilt or innocence." But at the point where the judge gave the car example, the judge had not told the venire that the case on trial was a criminal case. Shortly after giving the car example, the judge informed the venire that the case was a criminal case and instructed them on the presumption of innocence:

Let me explain some things that apply in every case where a person is charged with a criminal offense. Every – well, everything has to start somewhere. Where a trial starts in a criminal case is the presumption of innocence. Just like you

learned in eighth grade civic's [sic] class. Everyone is innocent until proven guilty or unless proven guilty.

Now, how do you prove somebody guilty? The prosecutor has to present evidence. They've got the burden of proof to present evidence that convinces you beyond a reasonable doubt of a person's guilt.

. . .

If after you've heard the evidence you are convinced to your own personal satisfaction that you do not have a reasonable doubt as to a person's guilt then the law requires you find them guilty. If once you hear the evidence you think either I'm convinced they didn't do it or I'm just not sure they did it. I'm not convinced they did it. I'm not convinced beyond a reasonable doubt. If you're not convinced beyond a reasonable doubt you're required to find them not guilty.

And then later in voir dire after the exchange between the judge and the venire member about a child as the sole witness, the judge explained:

But what we want everybody to do is just say I'm going to wait until I hear the evidence.

You asked me will I find a person guilty. I have no idea until I hear the evidence. Would I find them not guilty. Well, I have no idea until I hear the evidence. I'm going to presume that they're not guilty to start off because I haven't heard any evidence. I'm only going to switch that presumption where I find them guilty and get rid of that presumption once I hear enough evidence to convince me beyond a reasonable doubt. Up until then I'm going to presume him not guilty.

Appellant concedes that the trial judge "went on to define the presumption of innocence," and that he and the State had an opportunity to discuss the presumption with the venire. But he contends that the venire was "already prejudiced by the trial judge's erroneous instruction and real world example upon which to base their decisions throughout the trial."

We have reviewed the complained-of judicial comments in the context of the entire voir dire and have found no support for appellant's arguments. We conclude that the trial judge's comments did not infringe upon appellant's right to be presumed innocent and that an objection was required to preserve a complaint on this issue. Because appellant did not object, this issue presents nothing for our review. We resolve issue one against appellant.

## THE JURY CHARGE

In issue three appellant argues that the jury charge contained reversible error because the definition of indecency with a child did not contain the language "including touching through clothing."

### Standard of Review

In our review of alleged jury charge error, we first determine whether the charge contains error. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If it does, then we must determine whether the appellant suffered harm. *Id.* Because appellant concedes he did not object to the jury charge on this basis, we examine the record for evidence of egregious harm. *Id.* "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005) (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013)). We assess harm in light of the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; the arguments of counsel; and any other relevant information revealed by the record as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

### Analysis

In the statute defining indecency with a child, the legislature defined "sexual contact" to include touching through clothing. TEX. PENAL CODE ANN. § 21.11(c). The jury charge in this

case defined "sexual contact" in two different places; one contained the language "including touching through clothing" and the other did not.[1]

Appellant contends that the failure to include the language "including touching through clothing" in the definition of indecency with a child caused him egregious harm because "aggravated sexual assault does not permit a conviction based on . . . contact through clothing." He also argues that it could have caused the jury to be confused about the difference between the allegations of indecency with a child and aggravated sexual assault of a child and could have caused the jury to convict based on acts of sexual abuse for which there was no evidence. Assuming this was error, we conclude that appellant did not suffer egregious harm.

We have said that aggravated sexual assault of a child may be through clothing and reject appellant's argument that the jury could have been confused about the difference between the two offenses based on the failure to include the language "including touching through clothing." *See IslasMartinez v. State*, 452 S.W.3d 874, 879–80 (Tex. App.—Dallas 2014, pet. ref'd). Additionally, we previously concluded that the evidence was sufficient to support the verdict based on the allegations of indecency with a child alone. As a result, the jury's verdict is not based on acts of sexual abuse for which there was no evidence. We conclude that any error in the jury charge was not harmful. We resolve issue three against appellant.

---

[1]In the jury charge on continuous sexual abuse of a child, the judge listed the following acts of indecency with a child without stating that the sexual contact could be through clothing:

> intentionally or knowingly, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by touching the buttocks of [JH], a child younger than seventeen (17) years of age and not the spouse of the defendant, by means of defendant's male sexual organ;
>
> . . .
>
> intentionally or knowingly, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by touching part of the genitals of [JH], a child younger than seventeen (17) years of age and not the spouse of the defendant, by means of defendant's hand;
>
> . . .
>
> intentionally or knowingly, with the intent to arouse or gratify the sexual desire of any person, engage in sexual contact by causing the hand of [JH], a child younger than seventeen (17) years of age and not the spouse of the defendant, to touch part of the genitals of said defendant[.]

–12–

## CONCLUSION

We affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140508F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LENNIE P. EARBIN, Appellant

No. 05-14-00508-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-80478-2012.
Opinion delivered by Justice Lang-Miers, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of May, 2015.