Opinion filed May 13, 2021



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00200-CR
_____

**SHAQUILLE O NEAL PATTERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR51591**

### MEMORANDUM OPINION

The jury convicted Appellant, Shaquille O Neal Patterson, of indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2019). The trial court's judgment contained a finding that the victim was a child under the age of fourteen. *See* TEX. CODE CRIM. PROC. ANN. art. 42.015(b) (West 2018). The trial court assessed Appellant's punishment at confinement for twelve years in the Institutional Division of the Texas Department of Criminal Justice and a $1,000 fine.

In two issues on appeal, Appellant asserts that the trial court erred in failing to grant a mistrial during voir dire and that Appellant received ineffective assistance of counsel. We affirm.

*Background Facts*

On or around March 9, 2018, K.B., the alleged child victim, was living with Appellant and other family members. K.B. testified concerning an incident where Appellant made her uncomfortable by lying behind K.B. on the couch as they slept. K.B. testified that, although Appellant did not move while lying behind her, she could feel his penis on her bottom. K.B. also testified that she informed her school counselor about the unwanted touching by Appellant and about Appellant using K.B. and her siblings to sell drugs. Text messages between K.B. and Appellant, which indicated that Appellant potentially was using the children to sell narcotics, were introduced at trial. K.B. testified that she was relieved, but still scared, when her counselor informed her that she might not have to go home that night.

Another incident, where Appellant allegedly forced K.B. to inappropriately touch his genitals, was discussed during K.B.'s testimony. K.B. stated that Appellant asked her to change the music on a radio in the bathroom while Appellant was taking a bath. While K.B. was doing so, Appellant ordered her to come to the bathtub. He then took her hand and placed it on his genitals. Appellant stated, "This is what you're going to be doing from now on." K.B. testified that her hand was in a closed fist around Appellant's penis and that Appellant moved her hand up and down before she pulled away. Kelli Crouse, a forensic interviewer with the Midland Children's Advocacy Center, confirmed that K.B. had told her that Appellant had demanded that K.B. enter the bathroom and touch his penis. Appellant never made her do it again, and K.B. did not tell anyone about the incident until two years later. K.B. testified that she did not tell her mother about the incident because K.B. was scared and because, if K.B. would have told her mother, there would have been an argument or fight between her mother and Appellant.

Joelle Bracken, a social worker with the local school district, testified that she met with K.B. in her office on March 9, 2018, where K.B. told Bracken that drugs

2

were present in K.B.'s home and that K.B. was being forced to take crack cocaine to individuals. K.B. had never visited Bracken's office prior to that day, and Bracken testified that K.B. entered her office upon K.B.'s own volition. Bracken also testified that K.B. stated that Appellant asked K.B. to send him nude photographs and that Appellant would enter the bathroom while K.B. was showering. However, neither Bracken nor Midland Police Department's lead detective in this case, Jennie Alonzo, found any indication on K.B.'s phone that Appellant had requested nude photographs. In response to Bracken's questioning, K.B. admitted that Appellant touched her under her clothes. These statements were made on the Friday before the beginning of spring break, which is a common time for outcries to be made based on the fear of reentering a dangerous environment, according to Bracken. In response to K.B.'s statements, Bracken alerted Child Protective Services.

K.B.'s grandfather testified that K.B. approached him about the alleged sexual abuse by Appellant. K.B.'s grandfather told K.B. to tell her grandmother because he was concerned that he could get in trouble based on his status of being on federal supervised release. One month after K.B. initially approached her grandfather about the alleged sexual abuse, K.B. again brought the problem up to him, but this only occurred after Child Protective Services had been alerted.

Appellant testified in his own defense. Appellant stated that he was in a relationship with K.B.'s mother for ten years. Appellant viewed himself as a stepparent to K.B. Appellant was the disciplinarian in the household, including for K.B. In regard to the first incident of sleeping behind K.B. on the couch, Appellant did not dispute the occasion, but he claimed that he only slept at her calves and feet and never positioned himself behind her.

Appellant stated that K.B. did come into the bathroom to change the radio, but he stated that this was a common occurrence. Again, Appellant did not dispute the occasion, but he denied ever forcing K.B. to approach the bathtub and testified that

3

he never forced her to touch him. Appellant testified that he never touched K.B. inappropriately. The day prior to K.B.'s outcry, she and Appellant allegedly had an argument regarding her performance at a track meet, and Appellant indicated that this might have been a source of K.B.'s frustration.

Appellant stated that the text messages referring to drug dealing involved selling Viagra; however, Appellant admitted using cocaine. Appellant admitted to previously being convicted of possession of a controlled substance, tampering with evidence, and endangering K.B. in a drug-related incident.

After the jury was empaneled but before any witnesses were called, the State offered State's Exhibit No. 1, a certified copy of a document entitled "Waivers and Stipulations." Later, during its cross-examination of Appellant, the State asked Appellant to identify his signature on this document, which contained waivers and stipulations associated with the revocation of his community supervision and the adjudication of his guilt for the offense of possession of a controlled substance. Appellant asserted that his attorney did not allow him to view the document prior to Appellant signing it. Trial counsel stated in open court that Appellant had pleaded true to the allegations in the motion to revoke due to counsel's own ineffective assistance in failing to review the document carefully. One of the allegations in the State's motion to revoke mirrored the indictment in this case. The motion to revoke alleged that Appellant, "with the intent to arouse and gratify the sexual desire of [Appellant], cause[d] K.B., a child younger than 14 years of age, to engage in sexual contact by causing K.B. to touch a part of the genitals of [Appellant]" on or about March 9, 2018. By signing the waivers and stipulations, Appellant pleaded true to the State's motion to revoke and essentially admitted to the offense charged in this case.

*Issue One*

In Appellant's first issue, he asserts that the trial court committed error by mistakenly informing the venire panel that Appellant was charged with aggravated sexual assault, rather than the true charged offense of indecency with a child by contact. Appellant asserts that the trial court's misstatement allowed the jurors to assume that some of the accusations against Appellant included the offense of aggravated sexual assault. Appellant, upon the misstatement by the trial court, immediately requested a mistrial, which was denied.

*A. Standard of Review*

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Courts continually acknowledge that "[a] mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77. "Therefore, a mistrial should be granted only in cases where the 'reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds.'" *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (quoting *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)). Otherwise, sound discretion normally requires the trial judge to consider less drastic alternatives. *Torres v. State*, 614 S.W.2d 436, 442 (Tex. Crim. App. [Panel Op.] 1981).

When a party moves for mistrial, the scope of appellate review is limited to whether the trial court erred in not taking the most serious action of ending the trial. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). An appellate court must "uphold the trial court's ruling if it was within the zone of reasonable disagreement."

*Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).  We do not substitute our judgment for the trial court's judgment.  *Id.*  Instead, "we decide whether the trial court's decision was arbitrary or unreasonable."  *Id.*

*B. Analysis*

Appellant asserts that the trial court erred by not granting his request for a mistrial after the trial court misstated the charge against Appellant prior to voir dire. In front of the venire panel, the trial court made the following statement:

> Ladies and gentlemen, as I have told you, the case about to be tried this morning is The State of Texas versus Shaquille O'Neal Patterson, who is charged with the -- by incitement [sic] with the offense of aggravated sexual assault of a child.

The State immediately asked to approach to inform the trial court of the correct charge.  The trial court then informed the venire panel that Appellant was charged with the offense of indecency with a child by contact.  Appellant moved for a mistrial, asserting that the trial court had already tainted the minds of the venire panel.  The State requested that the jury be instructed that the court had misspoken. The trial court instructed the venire panel that it was to disregard the trial court's prior "instruction" and again stated that Appellant was charged with indecency with a child by sexual contact, the correct charge brought against Appellant.

In determining whether a mistrial should be granted, three factors must be balanced:

1. The severity of the misconduct (the magnitude of the prejudicial effect of the remarks);

2. The measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and

3. The certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

6

*Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007) (citing *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004)).

Most appellate complaints must be preserved by a timely request for relief at the trial level. *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). "The 'traditional and preferred procedure' for seeking relief at trial for a complaint that must be preserved is '(1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient.'" *Id.* at 98–99 (quoting *Young*, 137 S.W.3d at 69). A party may skip the first two steps and request a mistrial, but he will be entitled to a mistrial only if a timely objection would not have prevented, and an instruction to disregard would not have cured, the harm flowing from the error. *Id.* at 99.

In most instances, an objection will prevent the occurrence of the prejudicial event, and the failure to make a timely, specific objection prevents appellate review. *Young*, 137 S.W.3d at 70. "If an objectionable event occurs before a party could reasonably have foreseen it, the omission of objection will not prevent appellate review." *Id.* The reasons are clear. It is not possible to make a timely objection to an unforeseen occurrence, and an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event. *Id.*

Similarly, the request for an instruction that the jury disregard an objectionable occurrence is essential only when such an instruction could have had the desired effect, which is to enable the continuation of the trial by an impartial jury. *Id.* "But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal." *Id.* "Faced with incurable harm, a defendant is entitled to a mistrial and if denied one, will prevail on appeal." *Id.*

Accordingly, when a party's first action is to move for mistrial, as was Appellant's, the scope of appellate review is limited to the question of whether the trial court erred in not taking the most serious action of ending the trial. In other words, an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on appeal by the party who did not request these lesser remedies in the trial court. *Id.* Limited as this scope of appellate review may be, such an appellate review is available to such a party. *Id.*

In this case, Appellant made no objection to the trial court's comment and did not request an instruction that the jury disregard the comment. Appellant asserts that the trial court should have brought in a new venire panel, as voir dire had just begun at the time the court made the erroneous comment. Appellant argues that an instruction to the jury would not have cured the prejudice caused to Appellant because "once the jury heard Appellant was charged with the offense of aggravated sexual assault, it could draw inferences" that Appellant contends could only be cured by a new venire panel. We disagree.

### 1. Severity of Misconduct

Appellant asserts that the trial court's error of stating that Appellant was charged with aggravated sexual assault tainted the minds of the venire panel beyond repair. In support of his argument, Appellant cites *La Rosa v. State* for the proposition that the voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, and impartial jury will perform the duty assigned to it. *See* 414 S.W.2d 668, 671 (Tex. Crim. App. 1967). Appellant claims that, after hearing the wrong charge, the jury would no longer be able to be impartial due to the emotional and inflammatory nature of the trial court's statement.

Inflammatory comments, however, do not necessarily create prejudice. *See Hawkins*, 135 S.W.3d at 78. Rather, we look to determine whether the references

8

were made intentionally or mistakenly. *See State v. Cabrera*, 24 S.W.3d 528, 532 (Tex. App.—Corpus Christi–Edinburg 2000, pet. ref'd). In *Cabrera*, the prejudice came from the State's repeated and deliberate attempts to bolster the credibility of the child victim at the expense of the defendant and despite repeated warnings from the trial court. *See id.* Here, however, the trial court's misstatement of the charged offense could have reasonably been a mistake, rather than an intentional act. Also, unlike *Cabrera*, neither the State nor the trial court referred to the improper offense with regard to the evidence or the credibility of any witnesses. The first, and last, reference to the allegation of aggravated sexual assault came from the trial court prior to the commencement of voir dire and was clearly a mistake.

Given that the jurors actually selected from the venire panel were in a position to hear the correct charge against Appellant, no evidence of aggravation was presented at trial, and the correct charge was given, we conclude that the magnitude of any potential prejudice is low.

### 2. Curative Instructions

Appellant argues that any instruction requested or given by the trial court to "disregard the judge's own actions is fruitless and more antagonistic than helpful in seeking a new venire panel." The trial court instructed the jury on the correct charge after it misread the indictment:

> THE COURT: Ladies and gentlemen, I misspoke on the very first instruction to you. You are to disregard that completely and totally.
>
> The indictment alleges and [Appellant] is charged with indecency with a child by sexual contact.

Appellant failed to object to the trial court's curative instructions, and even if he had objected, the curative instructions given by the trial court were adequate. *Compare Unkart*, 400 S.W.3d at 99 (holding general rule is that a complaint to an improper judicial comment must be preserved at trial), *with Blue v. State*, 41 S.W.3d

9

129, 132–33 (Tex. Crim. App. 2000) (plurality op.) (granting relief on an improper-judicial-comment complaint that was not preserved at trial, where plurality focused on comments affecting defendant's presumption of innocence). Here, the trial court explicitly instructed the jury to disregard any portion of the prior, erroneous statement. *See Archie*, 221 S.W.3d at 700 (holding trial court's curative instructions essentially told jury to disregard prosecutor's statement on defendant's refusal to testify; instruction sufficiently ameliorated any potential harm). It is clear the trial court intended to protect Appellant's rights, and we conclude that there is no reversible error in the trial court's instruction.

In addition to the trial court's instruction, we note that the State is the party who prompted the instruction from the trial court by saying: "I think you can give [the jury] an instruction that you misspoke, Judge." The State is also the party who immediately interrupted the judge and asked to approach the bench in order to remedy the mistake. The swiftness of the prosecutor's action is significant since the jury would ultimately have little time to dwell on the misstatement. The prosecutor's action, combined with the trial court's instructions, served to ameliorate any potential harm from the improper reference. Further, the jury charge correctly instructed the jurors that Appellant was on trial solely on the charge contained in the indictment.

Appellant's sentence of twelve years was in the middle of the possible punishment range—two to twenty years. Appellant had prior criminal history that was introduced against him at trial. Under the circumstances, we believe that the trial court's curative instructions were effective. The jury was in the position to determine guilt/innocence and could have properly done so. Any effect of the improper reference was cured by the apology and instructions to disregard. *See Hawkins*, 135 S.W.3d at 85; *see also Brown v. State*, 769 S.W.2d 565, 567 (Tex. Crim. App. 1989).

### 3. Strength of Evidence Supporting Conviction

We do not believe that the strength of the evidence supporting Appellant's conviction in this case is relevant. At the time the motion for mistrial was denied, no evidence had been admitted; therefore, the trial court could not rely on any evidence in this case in its determination.

Given the prosecutor's swift action, the trial court's apology and instruction to the venire panel to disregard, the correct charge having been given to the jury, and the minimal likelihood of prejudice caused by the court's misstatement, we do not find that the trial court abused its discretion in denying a mistrial. *See Ramon*, 159 S.W.3d at 932. Furthermore, we believe that the curative instruction given by the trial court cured any potential prejudice the misstatement by the trial court could have caused. Appellant's first issue is overruled.

### Issue Two

Appellant's second issue asserts that he received ineffective assistance of counsel when his trial counsel failed to review a stipulation in a separate revocation/adjudication proceeding and properly advise Appellant of an admission therein that related to the elements of the instant offense. Insofar as Appellant collaterally challenges a conviction other than his conviction for indecency with a child by contact, we lack jurisdiction to address any such collateral attack on a judgment that is not before us on this direct appeal. *See Williams v. State*, No. 14-12-00483-CR, 2013 WL 5969666, at *1 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, no pet.) (mem. op., not designated for publication).

Based upon State's Exhibit Nos. 1 and 3, as well as Appellant's testimony, we know that Appellant was on community supervision at the time he was charged with the instant offense and that the State filed a motion to revoke his community supervision. In response to the State's motion to revoke, Appellant signed waivers of his right to a revocation hearing and stipulated to the allegations contained in the

motion to revoke. The allegations in the motion to revoke included the instant offense. Appellant asserts that he did not knowingly and voluntarily sign the waiver and that Appellant likely felt compelled to testify and waive his Fifth Amendment privilege upon State's Exhibit No. 1 being admitted into evidence at the opening of trial.

*A. Standard of Review*

To establish that counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689. A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

"We review the totality of the evidence when evaluating Appellant's ineffectiveness claim." *Id.* at 894. A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). We note at the outset of our analysis that no hearing was held on Appellant's motion for new trial. Accordingly, apart from the statement made by trial counsel in open court, the

12

appellate record does not contain an explanation from trial counsel concerning his actions.

*B. Analysis*

Relying on *Long v. State*, Appellant asserts that a stipulation or argument that destroys Appellant's only defense cannot be classified as trial strategy. *See Long v. State*, 764 S.W.2d 30, 31 (Tex. App.—San Antonio 1989, pet. ref'd); *see also Hutchinson v. State*, 663 S.W.2d 610, 613–15 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) (finding ineffective assistance of counsel where it was "obvious from the record that Appellant's counsel never intended to present any defense to the drug charge and that the plea of not guilty was never seriously urged"). In *Long*, trial counsel presented an insanity defense but then stipulated to a police report that showed that Long had become voluntarily intoxicated, thereby annulling his defense strategy. *Long*, 764 S.W.2d at 31. The trial court then "expressly based its rejection of appellant's defense on the damaging stipulated statement regarding voluntary intoxication." *Id.* The San Antonio court determined it to be "objectively unreasonable for counsel to stipulate to evidence that demolishes the defense he has proffered." *Id.* Here, Appellant pleaded "not guilty" to the instant offense but, at the direction of trial counsel, pleaded "true" to a stipulation in another matter that essentially admitted the elements of the charged offense in this case. Therefore, any defense presented by Appellant in this case, as well as his plea of "not guilty" were facially annulled based on the signed stipulation.

Trial counsel for Appellant admitted on the record that he was ineffective in his representation. Assuming, without deciding, that the first prong of *Strickland* has been met, we address directly the second prong. Appellant has not carried his burden to establish the second prong of *Strickland*: that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's deficient performance. *Strickland*, 466 U.S. at 693–94. A reasonable probability is

a probability sufficient to undermine confidence in the outcome of trial. *Strickland*, 466 U.S. at 694. This prong of the *Strickland* test asks if, "taking into account the totality of the evidence before the judge or jury," "'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011) (quoting *Strickland*, 466 U.S. at 695). After reviewing the evidence presented to the jury, which we have outlined above, we cannot say that there is a reasonable probability that the result of the proceeding would have been different but for counsel's alleged deficient performance. As discussed at length below, confidence in the outcome of this trial was not undermined. In light of the positive and consistent testimony given by the multiple witnesses for the State of K.B.'s outcries, we do not agree with Appellant's contention that the stipulation was "an albatross around the defense's collective neck," without which, there was a reasonable probability of a different result.

The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. *Strickland*, 446 U.S. at 695. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt concerning guilt.[1] *Id.* We do not take lightly that a signed statement of admission was placed before the jury by error of Appellant's counsel, but in assessing the prejudice, we must consider the *totality* of the evidence before the judge or jury. *Id.* Some factual findings will have been unaffected by the errors,

---

[1]"An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncra[s]ies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Strickland v. Washington*, 466 U.S. 668, 695 (1984).

and factual findings that were affected will have been affected in different ways. *Id.* "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695–96. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. "Taking the unaffected findings as a given[] and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* Keeping this in mind, our ultimate focus of inquiry must be on the fundamental fairness of the challenged proceeding. *Id.*

Application of the governing principles set out in *Strickland* is not difficult in this case. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary sufficiency, that the judge or jury acted according to law." *Id.* at 694. Appellant did not carry his burden to show that he suffered sufficient prejudice to warrant setting aside his conviction and sentence. Evidence showing that the jury could have reasonably believed Appellant to be guilty includes, but is not limited to, several important key points detailed below.

First, K.B. gave consistent statements to multiple confidants from the outset concerning the inappropriate events that transpired. The jury could have properly taken K.B.'s consistent testimony into consideration and determined that her credibility outweighed Appellant's. K.B.'s testimony was rather "matter-of-fact" and without outward exaggeration. Appellant's testimony during trial did not negate K.B.'s assertion that they had lain on the couch at the same time and that she was in the bathroom while Appellant was bathing. The jury could have reasonably concluded that K.B.'s detailed testimony was more credible than Appellant's

15

concerning the true context of the contact that transpired between the two of them. We further note that Appellant admitted to his previous conviction of endangering K.B. by using her to sell drugs for him, validating the reliability of the content in her outcries. In light of the totality of the evidence, with reasonable probability, we conclude that the result of the jury's verdict would not have been different even without the stipulation signed by Appellant. We therefore believe that the jury would have reasonably concluded, based on the evidence presented at trial, that Appellant committed the acts alleged, even had the written admission been excluded.

Based on the record before us, we cannot say based on a reasonable probability that the outcome of the proceeding would have been different if the stipulation would not have been signed and/or introduced. There is no outward indication in the record that the jury relied on the signed stipulation in making the determination that Appellant was guilty of indecency with a child, and the State did not reference or rely on the signed stipulation in closing argument. Failure to make the required showing of sufficient prejudice defeats Appellant's ineffectiveness claim. Appellant's trial was not fundamentally unfair. Because of Appellant's inability to carry his burden under the second prong of the *Strickland* test, we overrule Appellant's second issue relating to ineffective assistance of counsel.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

May 13, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

16