# Court of Appeals
## Tenth Appellate District of Texas

---
### 10-24-00217-CR
---

Ruben Arredondo,
Appellant

v.

The State of Texas,
Appellee

---
On appeal from the
19th District Court of McLennan County, Texas
Judge Thomas C. West, presiding
Trial Court Cause No. 2018-662-C1
---

JUSTICE HARRIS delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury convicted Ruben Arredondo of four counts of sexual assault of a child, one count of indecency with a child, and two counts of prohibited sexual conduct. He was sentenced to 20 years in prison for each count of sexual assault, 20 years in prison for the one count of indecency, and 20 years in prison for each count of prohibited sexual conduct. The sentence in the last count was

ordered to run "consecutively to and shall begin only when" the judgments and sentences on the first six counts "cease[] to operate."

Arrendondo raises five issues on appeal—the trial court erred in failing to grant a mistrial, the trial court abused its discretion in admitting Arredondo's prior juvenile adjudication into evidence, and the evidence was insufficient to support each conviction. We affirm the trial court's judgments.

**BACKGROUND**

J.D. lived with his mother and, starting at about the age of seven, had visitation with Arredondo, his father. J.D. had a half-sister with whom he shared visitation weekends with Arredondo. When Arredondo discovered that J.D. was inappropriately touching his half-sister, Arredondo did not report the incident to the authorities. Instead, he offered J.D a spanking, anal sex, or oral sex as punishment. J.D. chose oral sex because he thought it would be quick and less painful. Arredondo had J.D. perform oral sex on him and did so every time he discovered J.D. had touched his half-sister. Eventually, J.D. and his half-sister's visitations were moved to different weekends, but the oral sex between J.D. and Arredondo continued. Eventually, J.D. requested oral sex and then also requested anal sex. Arredondo complied. The sexual encounters between J.D. and Arredondo began when J.D. was around 13 years old and ended when J.D. was 17 years old.

When J.D.'s mother and step-father discovered a nude photo of J.D. on the family tablet, they confronted J.D. who told them what had been happening. J.D. also volunteered to go to the police to report what Arredondo had been doing to him and what he had been doing to his half-sister.

**MISTRIAL**

In his first issue, Arredondo complains the trial court erred in denying his motion for mistrial requested during voir dire because, according to Arredondo, the State specifically implied to the jury that Arredondo had previously been convicted of sexual assault of a child.

The State began its questioning of the jury panel by asking how many panel members knew a victim of sexual abuse. Almost everyone raised their juror card. The group was reduced by more specific scenarios, such as was the victim a relative or a child, was law enforcement involved, and how long before the victim made an outcry, until only one panel-member card was raised. The State then asked another broad group question:

> Now, again, this is Mr. Arredondo. Those of you, which is pretty much the whole room, those of you who raised your card, I want to know: Did it involve Mr. Arredondo? Raise your card if the abuse that you raised your hand on—

Arredondo objected and when in chambers, immediately requested a mistrial because he claimed the State had:

...basically told this entire jury panel that my client has previously been involved in an act of sexual assault of a child. That entire panel needs to go. This case needs to be thrown out. And I'm going to ask that it be dismissed for intentional error.

The trial court denied Arredondo's request.

The State contends Arredondo's issue is not preserved because trial counsel failed to make a specific objection or request an instruction to disregard. We agree with the State's second contention.

Most appellate complaints must be preserved by a timely request for relief at the trial court level. *Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013). The "traditional and preferred procedure" for seeking relief at trial for a complaint that must be preserved is "(1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient." *Id.* at 98-99 (quoting *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004)). A party may skip the request for an instruction to disregard, but the party will be entitled to a mistrial only if such an instruction would not have cured the harm flowing from the error. *See id.* at 99. *See also Lee v. State*, 549 S.W.3d 138, 145 (Tex. Crim. App. 2018).

Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). And we generally presume that a jury will follow the

judge's instructions. *Id*. Thus, if a curative instruction would have sufficed, it cannot be said that the trial court abused its discretion to deny a mistrial request. *See Lee*, 549 S.W.3d at 145; *Ocon v. State*, 284 S.W.3d 880, 885 (Tex. Crim. App. 2009).

Immediately after Arredondo objected and before the mistrial was requested in chambers, the trial court intervened and directed the jury to an example of bias toward Arredondo, explaining:

> Anything that you have incurred in your past, for all of those who raised your card, if there's anybody that is going to take those feelings and then direct them in an attack form [sic] against Mr. Arredondo, raise your card.
>
> Okay. Number 20.
>
> That is the example of bias. She's, like, I'm taking my personal experience and I'm going to find him guilty just because. I'm going to find him not guilty just because.
>
> I think that answers the question….

After the discussion of a mistrial in chambers, nothing more was mentioned about whether Arredondo was "involved" in any of the sexual abuse cases. The State continued with its voir dire examination based on the trial court's explanation, confirming with panel member 20 that knowing a sexual abuse victim would affect the panel member's ability to be fair and impartial in the case. After noting two more panel members who felt the same way, the State "flipped" the questioning to those members who knew someone *accused*

of a sex crime and whether that would affect the members' ability to be fair and impartial. The State then began a discussion about the rights of a defendant.

Based on the foregoing, we conclude that an instruction to disregard would have cured harm, if any, caused by the question proposed by the State in voir dire. This is especially true when the trial court, as soon as the objection was made, directed the jury's attention to an example of a bias against Arredondo.[1] Accordingly, because an instruction to disregard would have been sufficient to cure harm, if any, the trial court cannot be said to have abused its discretion in denying Arredondo's motion for mistrial. Arredondo's first issue is overruled.

**PRIOR JUVENILE ADJUDICATION**

Arredondo next contends the trial court abused its discretion in admitting during the guilt/innocence phase of the trial Arredondo's 1996 juvenile adjudication for engaging in the delinquent conduct of aggravated sexual assault of a child because, he contends, the probative value of the adjudication outweighed the danger of unfair prejudice under Texas Rule of

---

[1] Arredondo contends he was harmed by the State's question because after voir dire, two panel members were overheard saying that if it were up to them, they would hang Arredondo. However, nothing in the record indicated that the comment was made because of a potential prior sexual assault conviction. Moreover, one of the panel members involved in the overheard conversation told the trial court that the other member made the hanging comment and was not serious about it—he was "talking nonsense."

Evidence 403.

We review a trial court's decision to admit or exclude extraneous offense evidence under Rule 403 for an abuse of discretion. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We uphold a trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Holland v. State*, 702 S.W.3d 836, 839 (Tex. App.—Waco 2024, pet. ref'd).

To determine whether evidence is admissible under Rule 403, we use the *Montgomery* factors: (1) the strength of the evidence's probative value; (2) the potential for the evidence to "impress the jury in some irrational but nevertheless indelible way;" (3) the amount of time required at trial to develop the evidence; and (4) the proponent's need for the evidence. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024); *Montgomery v. State*, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990) (op. on reh'g). All testimony and physical evidence are likely to be prejudicial to one party or the other. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). It is only when there exists a clear disparity between the degree of prejudice of the evidence offered and its

probative value that Rule 403 is applicable.  *Id.*

### *Probative Value*

Article 38.37, Section 2(b) provides:  "evidence that the defendant has committed a separate offense described by Subsection (a)(1)…may be admitted in the trial of an alleged offense for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  TEX. CODE CRIM. PROC. art. 38.37, §2(b).   Arredondo argues the probative value of his prior juvenile adjudication is weak because it was "too remote and dissimilar to the charged offense."  We disagree with Arredondo.

Evidence of an extraneous sexual offense against a child admitted under article 38.37, section 2(b) is probative of the defendant's character or propensity to commit sexual assaults on children.  *Guedea v. State*, 683 S.W.3d 549, 553 (Tex. App.—Waco 2023, no pet.); *Holland v. State*, 702 S.W.3d 836, 842 (Tex. App.—Waco 2024, pet. ref'd).   The remoteness of such an offense alone does not fully undermine its probative value.  *See Guedea*, 683 S.W.3d at 553; *Deggs v. State*, 646 S.W.3d 916, 925-26 (Tex. App.—Waco 2022, pet. ref'd).  Further, similarities between the extraneous offense and charged offense may offset any loss of probative value resulting from the extraneous offense's remoteness.  *Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin

2016, pet. ref'd).

The adjudicated offense occurred 28 years prior to the instant trial. The adjudication documents admitted into evidence showed that Arredondo was adjudicated delinquent in 1996 when he was 14 years old for the offense of aggravated sexual assault of a child. He pled true and was found to have caused the "penetration of the anus of [A. A.], a child younger than 14 years of age…by inserting his penis into the victim's anus…." Testimony established that A.A., who was seven years old at the time of the offense, was Arredondo's younger brother. In the case at hand, J.D. is Arredondo's son. He was about 13 years old when Arredondo began sexually abusing him. The abuse began with oral sex and progressed through the years to anal penetration.

While the charged offenses were not exactly the same as the adjudicated offense, all of the charged offenses and the adjudicated offense were sexual offenses by Arredondo against a younger, male relative. Further, both the adjudicated offense and at least three of the charged offenses involved Arredondo contacting or penetrating the anus of a younger, male relative. Accordingly, we find these similarities to be more significant than the differences and, as such, offset any potential loss of probative value resulting from the adjudication's remoteness. This factor weighs in favor of admission.

### *Impression on the Jury*

Arredondo argues the adjudication improperly impressed the jury because the offense was "significantly different" from the charges tried and allowed the jury to overly focus on his past. We have already determined the similarities of the offenses to be more significant than the differences. Further, any potential improper focus by the jury was counterbalanced to some degree by the trial court's limiting instructions given during the trial and in the charge. *See Webb v. State*, 575 S.W.3d 905, 911 (Tex. App.—Waco 2019, pet. ref'd). This factor also weighs in favor of admission.

### *Time*

Although Arredondo takes issue with the State's later use of the adjudication in questioning other witnesses, the record reveals the amount of time required to introduce the adjudication into evidence was minimal. This factor weighs in favor of admission.

### *Need*

Lastly, Arredondo contends the adjudication itself was not needed because Arredondo's mother testified about the offense. Arredondo's mother sponsored the introduction of the adjudication. When testifying about the offense alleged and adjudicated, his mother would not agree that Arredondo inserted his penis in his brother's anus; she only agreed that Arredondo pled

true to that allegation. Without the introduction of the adjudication itself, his mother might have been a more difficult witness in confirming the allegations to which Arredondo pled true and of which he was adjudicated.

Further, Arredondo's defensive theory was that J.D. had the reputation of being untruthful. The introduction of that theory began with voir dire when the panel was questioned about children or young adults not being truthful and continued through closing argument. Arredondo and his wife both testified that J.D. was known for being untruthful. Challenges to the victim's credibility increases the State's need for the extraneous-offense evidence. *Holland v. State*, 702 S.W.3d 836, 843 (Tex. App.—Waco 2024, pet. ref'd). Moreover, the State had no eyewitness testimony other than J.D. and no DNA evidence to link Arredondo to the charged offenses.

Accordingly, for these reasons, the State needed the prior adjudication. This factor weighs in favor of admission.

### *Conclusion*

Based on our review of the record and after weighing the *Montgomery* factors, we conclude that while the prior adjudication may have been prejudicial, there was nothing to suggest a "clear disparity" between the degree of prejudice and its probative value. Accordingly, a balance of the factors shows the trial court did not abuse its discretion in admitting Arredondo's prior

adjudication over his Rule 403 objection.  His second issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his last three issues, Arredondo challenges the sufficiency of the evidence to support his convictions under Counts I-IV, Sexual Assault (Issue III), Count V, Indecency with a Child (Issue IV), and Counts VI and VII, Prohibited Sexual Conduct (Issue V).

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).  This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232.  Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App.

2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Arredondo contends the evidence is insufficient only because J.D.'s testimony regarding the instances of sexual abuse is not credible. But it is the jury's duty as the sole factfinder to assess J.D.'s credibility and to resolve any conflicts in the evidence or testimony. *See Curry v. State*, 622 S.W.3d 302, 310 (Tex. Crim. App. 2019); *Zuniga v. State*, 551 S.W.3d 729 (Tex. Crim. App. 2018). The jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.

Crim. App. 1986). We do not sit as the thirteenth juror or substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Edwards v. State*, 666 S.W.3d 571, 574 (Tex. Crim. App. 2023).

J.D. testified extensively as to the instances and to the elements of sexual assault, indecency, and prohibited sexual conduct by Arredondo. We do not recount in detail every part of J.D.'s testimony but provide only his testimony regarding the elements of each offense charged and other evidence relevant to the jury's credibility determination.

### *Sexual Assault*

As defined by a hypothetically correct jury charge, a person commits the offense of sexual assault of a child when the person intentionally or knowingly causes the penetration of the mouth of a child, a person younger than 17 years of age, by the sexual organ of the actor. TEX. PENAL CODE § 22.011(a)(2)(B); (c)(1). J.D. testified that in 2013, when he was about thirteen years old, Arredondo learned of J.D.'s sexual relationship with J.D.'s half-sister and offered him three options as punishment for his behavior, one of the options being oral sex. J.D. elected to perform oral sex on Arredondo because he thought it would be the quickest and least painful option of punishment. A few months later, in 2014, J.D. recalled performing oral sex on Arredondo a second time after Arredondo learned of the continuing relationship between J.D. and

his half-sister. J.D. said he was not allowed then to change the option for punishment. He testified that he performed oral sex on Arredondo "several dozen times" over the next few years.

### *Indecency*

As defined by a hypothetically correct jury charge, a person commits the offense of indecency with a child, if the person, with the intent to arouse or gratify the sexual desire of any person, engages in sexual contact with the child by touching the buttocks of the child by means of the sexual organ of the person, and the child is younger than 17 years of age. TEX. PENAL CODE § 21.11 (a)(1), (c)(2). J.D. testified that before 2017, Arredondo entered J.D.'s room. J.D. pretended to be sleeping. J.D. felt Arredondo remove J.D.'s shorts and felt Arredondo's penis between J.D.'s "butt cheeks," but not penetrating J.D.'s anus. J.D. also felt Arredondo ejaculate on his back.

### *Prohibited Sexual Conduct*

As defined by a hypothetically correct jury charge, a person commits the offense of prohibited sexual conduct if the person, with the intent to arouse or gratify the sexual desire of any person, engages in deviate sexual intercourse with another person the actor knows to be, without regard to legitimacy, the actor's descendant by blood by placing the genitals of the actor in contact with the anus of another person. TEX. PENAL CODE § 25.02(a)(1), (b)(1). The

biological father-son relationship between J.D. and Arredondo was established by a birth certificate. J.D. testified that twice, Arredondo engaged in anal sex with him. He described performing oral sex on Arredondo prior to Arredondo inserting his penis into J.D.'s anus.

### *Other Relevant Evidence*

J.D. was 24 years old at the time of the trial. He was born near the end of November in 1999. The abuse by his father began when J.D. was approximately 13 years old. J.D. made an outcry of abuse when he was 17 years old. J.D. voluntarily made a report to the Bellmead Police Department regarding Arredondo's abuse and his own abuse of his half-sister.

J.D.'s step-father testified at trial that J.D. told him that, as a form of punishment, J.D. performed oral sex on Arredondo and that their sexual relationship evolved to include anal sex. An officer with the Bellmead Police Department and Dr. Burkley with the Advocacy Center for Crime Victims and Children each testified that J.D. made an outcry of sexual abuse to them individually. Additionally, Dr. Burkley and Dr. Carter, a practicing psychologist, shared their expertise in the field of child sexual abuse, explaining delayed outcry and other dynamics common to child sexual abuse.

It was within the jury's province to believe J.D. and disbelieve Arrendondo's claims of J.D.'s untruthfulness. Accordingly, after reviewing all

the evidence in the light most favorable to the jury's verdict and giving due deference to the jury's weight and credibility determinations, we conclude that, on the evidence presented, a rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt. Arredondo's third, fourth, and fifth issues are overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgments.

_____
LEE HARRIS
Justice

OPINION DELIVERED and FILED: November 20, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
Do Not Publish
CR25

